KATE MARKEY, as Administratrix of HUGH MARKEY, Deceased, Appellant, *v.* THE COUNTY OF QUEENS, Impleaded, etc., Respondent.

1. COUNTIES — DEFECTIVE BRIDGE — NON-LIABILITY FOR PERSONAL INJURY. A county cannot, by any rule of law as established in this state, be held liable at the suit of a private individual, who has received personal injuries from a defective bridge, with the maintenance of which the county was chargeable.

2. MAINTENANCE OF BRIDGE A GOVERNMENTAL DUTY. Whether the maintenance of highways and bridges is devolved as a duty upon the towns, or upon the counties of the state, it must be regarded as a duty, in its nature, public and governmental; and this is especially so in respect to the duty imposed by the County Law (L. 1892, ch. 686, § 68) upon the counties, of maintaining a bridge which spans navigable waters of the state, forming a boundary line between two counties.

3. COUNTIES MUNICIPAL CORPORATIONS — THE COUNTY LAW. The provisions of the County Law (L. 1892, ch. 686) declaring a county to be a municipal corporation (§ 2), and that an action "to recover damages for any injury to any property or rights for which it is liable" shall be in the name of the county (§ 3), import no further liability on the part of a county than that which existed at their enactment.

4. DISTINCTION BETWEEN COUNTIES AND CITIES. There is a distinction between counties as civil divisions of the state for purposes of local government, and chartered municipal corporations, in respect to their liability for corporate acts. This distinction was not abrogated by the County Law, and it was not intended, by the provisions of that law, that counties should be treated as upon a par with cities, when engaged in similar transactions.

*Markey* v. *County of Queens,* 9 App. Div. 627, affirmed.

(Argued December 15, 1897; decided January 11, 1898.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered December 3, 1896, which affirmed a judgment in favor of defendant, entered upon a decision of the court at Special Term sustaining a demurrer to plaintiff's complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles J. Patterson* for appellant. The county of Queens is a municipal corporation charged by law with the duty of maintaining the bridge in question, and is liable for failing to keep it in repair. (L. 1892, ch. 686, § 2; L. 1892, ch. 687, § 2; L. 1892, ch. 685, § 1; 1 R. S. 364, §§ 1, 2; 2 R. S. [7th ed.] 924; L. 1894, chs. 456, 461; *People ex rel.* v. *Bd. Suprs.*, 142 N. Y. 271; L. 1895, ch. 954, § 2; *Borough of Bathurst* v. *Macpherson,* L. R. [4 App. Cas.] 256; *Smith* v. *W. D. L. Bd.*, 3 Com. Pl. Div. 423; *White* v. *H. L. Bd.*, L. R. [10 Q. B.] 219; *Blackmore* v. *Vestry of Mile End,* L. R. [9 Q. B.] 452; *Whitehouse* v. *Fellows,* 10 C. B. [N. S.] 731; *Foreman* v. *Canterbury,* L. R. [6 Q. B.] 214; *Tucker* v. *Axbridge Bd.*, 5 L. T. R. 26; *Cox* v. *Paddington Vestry,* 64 L. T. 566; *Ruck* v. *Williams,* 3 H. & N. 308; *Brownlow* v. *Met. Bd.*, 13 C. B. [N. S.] 768; 16 C. B. [N. S.] 546; *Southampton* v. *Southampton Bd.*, 9 E. & B. 801–812.) If this bridge was maintained by a city or village, there would be no doubt under the decisions concerning the liability. The claim that there is a distinction between the case of such a municipal corporation and that of a county is untenable. (Dillon on Mun. Corp. §§ 15, 23; L. 1892, ch. 686; 1 Thomp. on Neg. 619; Jones on Neg. §§ 59–69; *Mahonoy* v. *Scholly,* 84 Penn. St. 136; *Newland* v. *Davis,* 77 Penn. St. 319; *Rapho* v. *Moore,* 68 Penn. St. 404; *Dean* v. *New Milford,* 5 W. & S. 545; *Anne Arundel County* v. *Duckett,* 20 Md. 468; *Calvert County* v. *Gibson,* 36 Md. 229; *Prince Georges County* v. *Burgess,* 61 Md. 29; *Baltimore* v. *Baker,* 44 Md. 1; *Flynn* v. *Canton Co.*, 40 Md. 312, 322; *Hanford County* v. *Wise,* 71 Md. 43.) The plaintiff in this action, and her children, have been deprived of their means of support by reason of the negligence of the board of supervisors of Queens county, and their employees, in failing to maintain this Meeker avenue bridge in a proper state of repair, and she is entitled to recover damages therefor. (Jones on Mun. Corp. §§ 57, 58, 68.) It was not necessary to present the claim to the board of supervisors for audit. (L. 1892, ch. 686, § 2; *McGaffin* v. *City of Cohoes,* 74 N. Y. 387; *Brusso* v. *City of Buffalo,* 90 N. Y.

679 ; *Taylor* v. *City of Cohoes,* 105 N. Y. 54 ; *Gage* v. *Vil. of Hornellsville,* 106 N. Y. 667 ; *Harrigan* v. *City of Brooklyn,* 119 N. Y. 156.)

*Townsend Scudder* for respondent. A county is a corporation of limited corporate capacity and liability, and is under no liability in respect of torts. (Dillon on Mun. Corp. §§ 22, 23, 963 ; *Ensign* v. *Bd. Suprs. Livingston Co.,* 25 Hun, 21 ; *People ex rel.* v. *Stout,* 23 Barb. 338 ; *Hamilton Co.* v. *Mighels,* 7 Ohio St. 109 ; *Bertles* v. *Nunan,* 92 N. Y. 152 ; *Fitzgerald* v. *Quann,* 109 N. Y. 441 ; *Trans. Co.* v. *Chicago,* 99 U. S. 635 ; *People ex rel.* v. *Bd. Suprs.,* 142 N. Y. 271 ; *Hill* v. *City of .Boston,* 122 Mass. 344 ; *Mower* v. *Leicester,* 9 Mass. 247.) The maintenance of highways and bridges is a public, not a private, function of government, and for its exercise a county does not incur a liability to an individual. (*Hill* v. *Boston,* 122 Mass. 344 ; *Maxmilian* v. *Mayor, etc.,* 62 N. Y. 160 ; Dillon on Mun. Corp. [4th ed.] § 965 ; *Trans. Co.* v. *Chicago,* 99 U. S. 635 ; *People ex rel.* v. *Bd. Suprs.,* 142 N. Y. 271.) A county, in caring for highways and bridges, performs a duty properly belonging to the towns within its limits ; a town not being liable for defects in highways and bridges the county can incur no liability by the performance of this duty. (*Hill* v. *Suprs. Livingston Co.,* 12 N. Y. 52 ; *Barber* v. *Town of New Scotland,* 88 Hun, 522 ; *People ex rel.* v. *Town Auditors,* 74 N. Y. 310 ; *Martin* v. *Mayor, etc.,* 1 Hill, 545 ; *Lane* v. *Town of Hancock,* 142 N. Y. 510 ; *Hughes* v. *Charlemont,* 107 Mass. 414 ; *Mower* v. *Leicester,* 9 Mass. 247 ; *Bigelow* v. *Inhabitants of Randolph,* 14 Gray, 541 ; *Chidsey* v. *Town of Canton,* 17 Conn. 475 ; *Reed* v. *Inhabitants of Belfast,* 20 Me. 346 ; *Eastman* v. *Meredith,* 36 N. H. 284 ; *Morey* v. *Town of Newfane,* 8 Barb. 645.) The bridge in question was in the control of the contractors, who alone are liable for the failure to keep it in repair. (Dillon on Mun. Corp. §§ 1028–1030 ; *Engel* v. *Eureka Club,* 137 N. Y. 100 ; *Storrs* v. *City of Utica,* 17 N. Y. 104 ; *McCafferty* v. *S. D. & P.*

*M. R. R. Co.*, 61 N. Y. 178; *Nolan* v. *King*, 97 N. Y. 565; *Pack* v. *Mayor, etc.*, 8 N. Y. 222; *Blake* v. *Ferris*, 5 N. Y. 48; *Kelly* v. *Mayor, etc.*, 11 N. Y. 432; *Trans. Co.* v. *Chicago*, 99 U. S. 635.) This claim should be presented to the board of supervisors before an action can be maintained. (*Albrecht* v. *County of Queens*, 84 Hun, 399; *Erhard* v. *County of Kings*, 69 N. Y. S. R. 624; *Martin* v. *Suprs. of Greene Co.*, 29 N. Y. 645; *Brady* v. *Suprs. of N. Y.*, 10 N. Y. 260; *People ex rel.* v. *Suprs. of Madison Co.*, 51 N. Y. 442.)

GRAY, J. Plaintiff's intestate lost his life through the breaking down of a bridge over Newtown creek and this action was brought to recover damages of the defendants, the county of Queens and the city of Brooklyn, for their alleged negligence with respect to the condition of the bridge.

A bridge had long existed over Newtown creek, which was the boundary line between the counties of Kings and Queens, and, pursuant to an act passed in 1892, the boards of supervisors of these counties had made a contract for its reconstruction. Meanwhile, a temporary foot bridge, for the accommodation of foot passengers during the progress of the work, was erected and made use of by the public. The plaintiff alleges that this temporary bridge was insufficient, out of repair, inadequate for its purposes and not calculated to bear the strain to which it would be subjected and that the defendants were negligent in permitting its use by the public in that condition. The county of Kings, under chapter 954, Laws of 1895, became absorbed, on January 1st, 1896, into the city of Brooklyn; which was, therefore, made a defendant. The county of Queens, the other defendant, demurred to the complaint, for not stating facts sufficient to constitute a cause of action against it. The demurrer was sustained at the Special Term and at the Appellate Division of the Supreme Court, in the second judicial department; which latter court has certified the case to us, as involving a question of law which ought to be reviewed by this court. That question, broadly, is whether,

by any rule of law, as established in this state, a county may be held liable, at the suit of a private individual, who has received personal injuries from a defective bridge, with the maintenance of which the county was chargeable. The question is one of considerable interest and, beyond the general discussion, demands an interpretation of the provisions of the County Law of 1892, (Laws of 1892, chap. 686); the second section of which declares the county to be a municipal corporation. The provision is as follows: "A county is a municipal corporation, comprising the inhabitants within its boundaries, and formed for the purpose of exercising the powers and discharging the duties of local government, and the administration of public affairs conferred upon it by law." By the third section, it is provided that: "An action * * * to enforce any liability created, or duty enjoined upon it, or upon any of its officers or agents for which it is liable, or to recover damages for any injury to any property or rights for which it is liable, shall be in the name of the county." It is argued that the county, being thus declared a municipal corporation and being charged by law with the duty of maintaining the bridge, is made subject to those liabilities which it was understood the law attached to that class of corporations for breaches of duty. It is urged that as counties never were known, before this statute, as municipal corporations, the Legislature, in its enactment, must have intended that they should be treated as upon a par with cities, when engaged in similar transactions, and that this proposition should be sustained from the point of view of public interest. In considering the question before us, we must not fail to observe that the language of section three, above quoted, seems to import no further liability than that which was then existing. The only portion of that section which is material to the case is that which provides for an action "to recover damages for any injury to any property or rights for which it is liable." In other words, what the Legislature appears to have done was to provide that where the county *is* liable for an injury, the action shall be in the name

of the county. If, prior to the passage of the County Law, the county was not liable for such an injury, as was sustained in the present case, did it become so thereafter by implication from the language of the second section, as argued for the appellant, in the use of the words "municipal corporation," or by reason of the third section?

To a clear understanding of the question, it may be well to consider what was the legal status of counties of this state and then, incidentally, what is that of a municipal corporation proper, such as an incorporated city. The civil divisions of a state into counties had their origin in England; where, preceding the organization of the kingdom itself, they were, thereafter, continued from recognized necessities in government; as other countries had their departments, or their provinces. In such divisions, it was found that the purposes of local government and of the administration of justice were promoted. Differing from England in their origin, in this country they were first created by the Legislatures of the various colonies and, subsequently, by the states of the Union. They were invested with such corporate attributes as were essential to a proper performance of the duties of local government. They were, in effect, subdivisions of the governed territory, established for the more convenient administration of government and having such powers as were necessary to be exercised for the welfare, advantage and protection of the public within their boundaries. While in the People resided the sovereign right to declare the general mode of their government, it was the appropriate duty of their legislative body to so arrange the territory of the state into civil divisions and to so apportion among them governmental duties, as would best conduce to the advantage of its citizens.

By the common law of England, a county, though sometimes regarded as a *quasi* corporation, could not be subjected to a civil action for a breach of its corporate duty; unless such an action was expressly given by statute. The duty of maintaining and repairing bridges belonged to it; but the only remedy for a breach of that duty was by presentment or indict-

ment.  An unsafe condition of a highway, or a bridge as a part of the highway, was regarded as the subject of a popular action and not of a private action.  In *Russell* v. *The Men of Devon* (2 T. R. 667), which was an action by an individual against the inhabitants of a county for an injury sustained through the defective condition of a county bridge, it was held that they were not such a corporation, or *quasi* corporation, against whom such an action could be maintained.  It was reasoned that, while the inhabitants of the county might be a corporation for some purposes, no statute had authorized such an action and that the action would be one against the public. The authority of that case, as settling the rule at common law that no civil action could be maintained for an individual injury, in consequence of the breach of a public duty on the part of the inhabitants of a county, has been repeatedly recognized in England and in this country.  I may refer in particular to the case of *Bartlett* v. *Crozier* in this state (17 John. 439), and to the cases in Massachusetts of *Riddle* v. *Proprietors, etc.,* (7 Mass. 169), and *Mower* v. *Leicester* (9 id. 247), and to the very thorough discussion of the cases in England and in the United States, which will be found in *Hill* v. *City of Boston* (122 Mass. 344), and in chapter 23 of vol. 2 of Dillon's Municipal Corporations.  I think it, however, sufficient to confine the present discussion to what the statutes and decisions of this state require us to hold upon the question.

In this state its division into counties, or sections, for the purposes of local government was but a continuance of a method, which, while a colony, it had adopted from England. By the Constitution of the state, it was provided that such parts of the common law as formed the law of the colony of New York were retained as the law of the state.  If under the common law counties could not be subjected to private actions, for the results of acts done in the performance of governmental duties, then it should follow that counties of this state could not become liable to such actions; unless the common law, in that respect, has been changed by statute.

86

Where a principle of the common law has entered into our form of government, it is controlling, until by legislation, express in its terms, it is modified, or negatived by the substitution of a new declaration upon the subject. The only statute for which that could be claimed is the County Law of 1892, which, heretofore, I have referred to.

Having regard to the fact that counties were created such for the better and more convenient government of the state, both upon authority and upon principle, in the exercise of those political powers which appertain to local government and which are for the public benefit, they should be no more liable for damages resulting therefrom, at the suit of a private individual, than would be the state itself. The counties and towns of this state were always bodies corporate for certain purposes, having been endowed with capacities to purchase and to hold real and personal property and to make contracts in reference thereto. (R. S. part 1, art. 1, tit. 1, chaps. 11 and 12.) The corporate powers were of defined and limited extent and in all other respects which concern governmental duties, included among which was the conservation of highways, roads and bridges, they were merely divisions, organized for the convenient exercise of portions of the political power of the state. (*Lorillard* v. *Town of Monroe,* 11 N. Y. 392.) The common-law rule which rested the duty of caring for and repairing highways and bridges upon the counties did not obtain in this state. That duty was confided to the officers of towns; but special acts were passed from time to time, whereby the burden has been shifted so as to be imposed, either upon two or more towns, or upon the county, or upon both counties and towns. (*Hill* v. *Supervisors, etc.,* 12 N. Y. 52.) In the County Law of 1892, it was provided that where a bridge spans any of the navigable tide-waters of this state, (as in the present case), forming a boundary line between two counties, the expense of its maintenance is made an equal charge on the two counties in which the bridge is situated. (Sec. 68.) Whether the maintenance of highways and bridges is devolved as a duty upon the towns, or upon

the counties of the state, it must be regarded as a duty, in its nature, public and governmental. (*Lorillard* v. *Town of Monroe, supra.*)   There is no distinction to be made between highways and bridges in the matter of the duty.  A public bridge is a public highway.  (Ang. on Highways, § 40.)   Its maintenance is quite as much a governmental duty towards the public within the territory of the state, and the  principle that the state holds its highways in trust for the public is applicable.  (*Transportation Co.* v. *Chicago,* 99 U. S. 635.) This is especially true where a bridge is necessary to cross the navigable waters of the state ; but it is true under all circumstances.   In *People* v. *R. & S. R. R. Co.,* (15 Wend. 113, 134), it was said by SAVAGE, Ch. J. : " There can be no question, therefore, that the state legislature has the power to build bridges, where they shall be necessary for the convenience of its citizens.  \*  \*  \*  It is the duty of the state governments to afford their citizens all the facilities of intercourse which are consistent with the interests of the community."   To charge the duty of building and maintaining a bridge over navigable waters upon the boards of supervisors of counties, was but a convenient mode of exercising that governmental function.   The power thus conferred upon the county officers was for the public benefit and in its exercise they acted as the agents for the public at large.   The state, in its sovereign character, had a duty to perform in the maintenance of the bridge as a part of the public highway and its performance might properly be delegated to the officers of the particular civil division.   The corporate body of Queens county derived no especial advantage from it in its corporate capacity and, if that be true, it should not be liable for the negligent acts of the board of supervisors, upon whom the duty was rested of reconstructing the bridge. It should be as exempt from a private action as would be the state itself.   In *People ex rel. Keene* v. *Supervisors, etc.,* (142 N. Y. 271), we expressly held that the power conferred upon the counties of Kings and Queens with respect to this work was in the public interests and for the public benefit.   As

lately as in the case of *Hughes* v. *County of Monroe*, (147 N. Y. 49), where it was sought to hold the defendant liable for injuries sustained by the plaintiff, while operating a steam mangle in the laundry of an insane asylum, the doctrine was, plainly, asserted of the non-liability of counties and of other municipal corporations for the acts of their officers, when engaged in the discharge of public duties and, to that extent, exercising acts of sovereignty.

This doctrine of non-liability, resting as it does upon the principle that the grant of power is to the county in its political character and as a means of the exercise of the sovereign power in measures of public interest and for the public benefit, is illustrated in various decisions of this court; where the question arose as to the liability of a city for corporate acts resulting, through a negligent performance, in injury to individuals.

With respect to such a municipal corporation proper as a city, the rule of law is well settled by frequent adjudications that the grant by the legislature of a city charter, authorizing and requiring a city to perform certain duties, renders it liable to a private action for neglect in their performance, when a county or town would not be so liable. A distinction exists between such a corporation, which is created by charter and is granted the power to own and to manage private property and is invested with particular franchises, and a municipal corporation, which is created for the purposes of state government and to exercise as one of its civil divisions, certain of its political powers. In the case of the former, its responsibility depends upon the nature of the powers exercised. NELSON, Ch. J., in *Bailey* v. *Mayor, etc.* (3 Hill, 531), discusses the powers of cities as municipal corporations; but the discussion is not without its usefulness to the present case.

He laid down the doctrine, which has been followed in subsequent decisions in this court, that a clear distinction exists between the powers which belong to a city as a municipal body. He observed that if they were " granted for public purposes exclusively, they belong to the corporate body in its

public, political or municipal character. But if the grant was for purposes of private advantage and emolument, though the public may derive a common benefit therefrom, the corporation, *quoad hoc*, is to be regarded as a private company. It stands on the same footing as would any individual or body of persons upon whom the like special franchises had been conferred." This doctrine was reiterated in *Lloyd* v. *Mayor* (5 N. Y. 369), and in *Maxmilian* v. *Mayor* (62 N. Y. p. 164). FOLGER, J., in the latter case, expounding the nature of the duties imposed upon a municipal corporation, said : " One is of that kind which arises from the grant of a special power, in the exercise of which the municipality is as a legal individual; the other is of that kind which arises, or is implied, from the use of political rights under the general law, in the exercise of which it is as a sovereign. The former power is private, and is used for private purposes; the latter is public and is used for public purposes. * * * Where the power is intrusted to it as one of the political divisions of the state, and is conferred not for the immediate benefit of the municipality, but as a means to the exercise of the sovereign power for the benefit of all citizens, the corporation is not liable for nonuser, nor for misuser by the public agents." The principle that a city, as a municipal corporation, is held to a strict liability to respond in damages at the suit of a private individual, for its negligence in the maintenance of its streets and other properties, was thus explained by SELDEN, J., in *Weet* v. *Brockport* (16 N. Y. 162, foot note): " The surrender by the government to the municipality of a portion of its sovereign power, if accepted by the latter, may with propriety be considered as affording ample consideration for an implied undertaking, on the part of the corporation, to perform with fidelity the duties which the charter imposes." The reasoning of these cases has its pertinency to the present case. The County Law of 1892, in denominating a county as a municipal corporation, specifies the purpose to be that of " exercising the powers and discharging the duties of local government and the administration of public affairs ; " and

prior to the enactment it existed to perform just such governmental functions.

I think that the principle of our decision must necessarily be this : That as the counties of this state were bodies corporate for certain specific purposes, before the enactment of the County Law of 1892, now that they are declared thereby to be municipal corporations, their liability for corporate acts is no further enlarged than what may be clearly read in, or implied from, the statute. Their becoming municipal corporations in name imports no greater liability; because, by the third section of the law, their liability for injuries is confined by the language to that which was existing. The liability remains as it was, neither greater nor less. No new duty or burden has been imposed upon counties, in respect to the maintenance of bridges over navigable boundary streams; the duty, which always existed for public purposes and for the public benefit, is continued. The work of maintaining the bridge in question was properly charged upon the counties; because it could be more advantageously performed by them than by the towns. Towns, themselves, were not liable for damages arising from defective highways and bridges, until, by an act of the legislature in 1881, the liability which formerly rested upon the commissioners of highways was transferred to them. If it was necessary, in order that towns might be made liable in private actions, that there should be such legislation, it is as necessary, I think, that there should be some express legislation, in order to impose the liability upon a county which did not previously exist. The object of the County Law of 1892, in my judgment, in declaring the county a municipal corporation, was in order that it might be sued as a legal entity in such cases where, previously, actions were maintainable only in the name of the board of supervisors.

The appellant's counsel attacks the reasoning, which distinguishes between counties and chartered municipal corporations, in respect to their liability for corporate acts, as being unsubstantial and artificial, and he is able to cite us to some observations by text writers to that effect. The distinction is

none the less real, however, because processes of reasoning might lead to the conclusion that the two classes of corporations should be placed upon a par in their attributes and incidents. The distinction rests upon established conditions of state government, which must endure until the Legislature expressly changes them. It has, not infrequently, been the case that statutes have so far modified some common-law condition, under which we were governed as a society, as to subject what remained of it to criticism similar to that now indulged in; but the rule is firmly established that the common law has been no further abrogated by a statute than is to be understood from the unmistakable import of the language used. *Bertles* v. *Nunan* (92 N. Y. 152), presents an interesting discussion in point under that head.

The conclusion I have reached, after a careful consideration of the subject, is that, in the work of construction of this bridge, the board of supervisors were executing a certain public duty, imposed upon them as the proper public agents in that particular civil division of the state, and that the county could not be subjected to a private action for injuries occurring in, or by reason of, the performance of the work. I do not think it is consonant with the reason of the rule of law, which concedes to the sovereign power in government an exemption from liability, that a private individual may have a right of action against those who have but exercised a lawful power which was vested in them by the legislative body for the public convenience and welfare and not for any private benefit of the corporate body.

The judgment appealed from should be affirmed, with costs.

BARTLETT and MARTIN, JJ. (dissenting). Where the duty to construct a highway or bridge is imposed by law upon a county we see no reason why, in case of negligence and consequent injury to the citizen, there should be any substantial difference as to liability between counties and cities as the former like the latter are now municipal corporations.

The county in the performance of this duty is clothed with a special power, not intrusted to it as a political division of the state in the exercise of the sovereign power for the benefit of all citizens, but strictly in the interest of the municipality.

All concur with GRAY, J., for affirmance, except BARTLETT and MARTIN, JJ., who dissent on ground stated in memorandum.

Judgment affirmed.