## NAPIER v. CITY OF BROOKLYN.

(Supreme Court, Appellate Division, Second Department. June 6, 1899.)

1. COUNTY—LIABILITY FOR CONVERSION—PARKS.

A county is not liable for an unlawful conversion by its park commissioner of buildings which belonged to a tenant on land acquired by it for a park.

2. MUNICIPAL CORPORATION—CONVERSION BY PARK COMMISSIONER—CITY'S LIABILITY.

The transfer of a park to the city of Brooklyn by Laws 1895, c. 954, consolidating Kings county with the city, did not render the city liable for the unlawful conversion by a county park commissioner of buildings on the park land belonging to a tenant when the park was acquired.

3. SAME—CONSOLIDATION OF BROOKLYN AND KINGS COUNTY.

A park was transferred to the city of Brooklyn by Laws 1895, c. 954, consolidating Kings county with the city, and the owner demanded of the city park commissioner the restoration of buildings thereon, which had been unlawfully converted by the county park commissioner on the acquisition of the park. The city commissioner refused, declaring that they rightfully belonged to the city. *Held*, that it was an assertion in behalf of the city of dominion and control, which constituted an actionable conversion thereof by the city.

4. SAME—PARK DEPARTMENT—CORPORATE FUNCTIONS.

By Laws 1895, c. 947, amending Laws 1888, c. 583, tit. 16, § 2, so as to vest in the department of parks the exclusive government, management, and control of all the parks, squares, and public places in the city of Brooklyn, without any qualification, it was not intended that the park department was no longer to be regarded as an instrument for the performance of corporate functions of the city; the department of parks being still enumerated by the charter among those through which the administrative power of the city was to be exercised, and the duties thereof being unchanged.

5. SAME—OFFICERS—CITY'S EXEMPTION FROM LIABILITY.

The provision of Brooklyn City Charter (Laws 1888, c. 583, tit. 22, § 28) exempting the city from liability for damages for misfeasance or nonfeasance of any city officer of any duty imposed on him by the charter does not apply to duties imposed on the park department in relation to

parks of Kings county by virtue of Laws 1895, c. 954, consolidating that county with the city.

Appeal from special term, Kings county.

Action by John Napier against the city of Brooklyn. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

William J. Carr, for appellant.

A. G. Cropsey, for respondent.

WILLARD BARTLETT, J. In 1894 the legislature passed an act creating a department of parks in any county of this state containing a city with a population in excess of 800,000, and in which the boundaries of the city were not coterminous with those of the county. Laws 1894, c. 758. This statute, although general in its terms, could apply only to the county of Kings. It provided, in effect, that the department of parks of the city of Brooklyn should be the department of parks of the county, and should have and possess all the powers and duties then held and exercised by said department in relation to any park, parkway, road, highway, boulevard, or concourse in said county. See section 5 of statute cited. In 1895, pursuant to the provisions of this statute, a piece of land near Ft. Hamilton was acquired for park purposes from the Dyker Meadow Improvement Company. At this time Frank Squire was the park commissioner of the city of Brooklyn, and as such was at the head of the department of parks of Kings county. For some years previous the plaintiff had been a yearly tenant in occupation of a portion of the land thus acquired, and, as sufficiently appears from the proof, had received permission from the Dyker Meadow Improvement Company to erect a pavilion and bath houses thereon, with liberty to remove the same at any time when the owner should effect a sale of the land. Upon the sale and conveyance to the county in 1895, the plaintiff sought to remove the structures in accordance with the terms of his contract with the Dyker Meadow Improvement Company, but Mr. Squire refused to allow him to do so, and, through his subordinates in the department of parks, took possession of the buildings, together with a considerable quantity of personal property therein contained, and withheld possession thereof from the plaintiff during his term of office. By virtue of the enactment of chapter 954 of the Laws of 1895, the county of Kings and the city of Brooklyn were consolidated into one body corporate and politic, by the name of the city of Brooklyn, from and after January 1, 1896. All the rights, privileges, franchises, property, interests, claims, and demands of the county of Kings became vested in the city of Brooklyn from and after that date, and the local administration and government of the city of Brooklyn and county of Kings were thereafter vested in and performed by a single corporation bearing the name of the city. After this consolidation, and in March, 1896, the plaintiff made a demand upon Mr. Timothy L. Woodruff, who was then park com-

missioner of the city of Brooklyn, for the property taken from
him at Dyker Meadow, as already mentioned; but the commis-
sioner refused to give it up, stating that it was purchased from
the Dyker Meadow Improvement Company, and belonged to the
city of Brooklyn for the park department.

Under the doctrine of Markey v. Queens Co., 154 N. Y. 675, 49
N. E. 71, and the cases therein referred to, it seems quite clear that
the county of Kings could not be held liable in a civil action for
conversion by reason of the conduct of Commissioner Squire or his
subordinates in taking possession of the plaintiff's property.
While the act was unlawful, the remedy of the owner was against
the individuals by whom the wrong was done, and not against the
county. Nor, as it seems to me, did the transfer of the property
of the county to the city, by virtue of the consolidation of the two
governments, which went into effect at the beginning of 1896, con-
fer upon the plaintiff any different or other right of action by rea-
son of the conversion than that which belonged to him prior to
the consolidation. The plaintiff's buildings and chattels had never
become the property of the county, although taken from him by
persons assuming to act as county officers; and the city of Brook-
lyn acquired no better title to the property than belonged to the
county. Up to the time, therefore, of the demand upon Commis-
sioner Woodruff, the plaintiff had no grievance against the city of
Brooklyn, or any officer thereof; and, if the maintenance of the
present action depended solely upon what had happened before
that time, I do not see how this judgment could be upheld. When,
however, the plaintiff asked Mr. Woodruff, the new park commis-
sioner of the consolidated corporation, for the restoration of his
property, and the commissioner declared that it rightfully belong-
ed to the city of Brooklyn for the park department, and for that
reason refused to return it, I think that he asserted in behalf of
the city a right of dominion and control over the property which
constituted an actionable conversion thereof at that time. For
this conversion the city is liable, unless exempted by a provision
in the charter presently to be considered. Municipal corporations
proper "are liable for acts of misfeasance positively injurious to
individuals, done by their authorized agents or officers in the
course of the performance of corporate powers constitutionally
conferred, or in the execution of corporate duties." 2 Dill. Mun.
Corp. (4th Ed.) § 966. The action of Commissioner Woodruff in
declining to comply with the plaintiff's demand for a return of
his property, whether rightful or wrongful, was done by him in the
course of the performance of his duties as head of the department
of parks of the city of Brooklyn. Under the charter of Brooklyn,
as enacted in 1888, the department of parks was vested with the
exclusive government, management, and control of all the parks
in the city, subject, however, to the powers of the common council
in relation thereto. Laws 1888, c. 583, tit. 16, § 2. So long as this
provision remained in force, it was clear that the management of
the parks was a duty of the municipal corporation, and that the
department of parks, being charged with that duty, was an instru-

mentality executing a corporate function, and responsible for misconduct in so doing which resulted in injury to individuals. In 1895, however, the section above cited from the charter in relation to the power of the department of parks was amended so as to omit the limitation making the department subject to the powers of the common council (Laws 1895, c. 947); so that at the time of Commissioner Woodruff's refusal to restore the plaintiff's property the law provided, without any qualification, that the department of parks should have the exclusive government, management, and control of all the parks, squares, and public places in the city. The legislation in respect to the county parks and the consolidation of the city with the county towns gave the commissioner like powers over the lands which had been acquired for county park purposes; and it is suggested that, these powers having been made exclusive of any control by the common council under the amendment of the charter adopted in 1895, the park department was no longer to be regarded as an instrument for the performance of a corporate function of the municipality. I do not think that such a sweeping effect should be given to the amendment. The charter still provided that the administrative power of the corporation known as the city of Brooklyn should be vested in the mayor, the heads of departments therein named, and such other officers as should from time to time be created by law or appointed by virtue of the charter itself; and it enumerated the department of parks as one of the departments through which such administrative power was to be exercised. The character of the duties of the park department was in no wise changed by the amendment. Under the charter the power to control and manage the parks was treated as a power to be exercised for the purposes of the municipal corporation, and not to promote a distinct public purpose of a different character, such as those considered in the cases of Maxmilian v. City of New York, 62 N. Y. 160, and Ham v. City of New York, 70 N. Y. 459. When the city and county governments were consolidated, the maintenance of all the parks within the boundaries of the city became a public purpose, in which the municipal corporation was directly interested; and I think that the duty of taking care of all the parks, of both classes, was thereafter to be regarded as a duty of the city.

But it is argued that the defendant is relieved from responsibility for the act of the park commissioner in retaining possession of the plaintiff's property, after it was demanded in 1896, by the exemption clause of the charter, which provided that the city of Brooklyn "shall not be liable in damages for any misfeasance or nonfeasance of the common council, or any officer of the city or appointee of the common council, of any duty imposed upon them, or any or either of them, by the provisions of this act, or of any other duty enjoined upon them, or any or either of them, as officers of government, by any provision of this act." Laws 1888, c. 583, tit. 22, § 28. It will be observed that this exemption relates only to the wrongful or negligent performance of a duty imposed by the charter itself. Whatever Commissioner Woodruff did with

reference to the plaintiff's property was done in the exercise of duties imposed upon him, not at all by the charter of the city of Brooklyn, but by virtue of the legislation concerning the county parks which brought the acquisition of the Dyker Meadow lands within the jurisdiction of the department of parks of the city of Brooklyn. Hence the exemption clause in the charter has no application to the facts of the case at bar, and the city remains liable under the general doctrine that "the unauthorized acts of municipal officers are regarded as the acts of the corporation, provided the acts are performed by that branch of the municipal government which is invested with jurisdiction to act for the corporation upon the subject to which the particular act relates." City of Chicago v. Chicago & W. I. R. Co., 105 Ill. 73. In this case it is clear that the department of parks of the city of Brooklyn has converted the property of the plaintiff to the use of the city without any warrant or excuse. In my opinion, a fair construction of the law makes the city liable for this wrong.

I think that the judgment is right, and should be affirmed. All concur.