## HALL v. TOWN OF OYSTER BAY.

(Supreme Court, Appellate Division, Second Department. May 31, 1901.)

MUNICIPAL CORPORATIONS—CONSTRUCTION OF BRIDGE OVER OYSTER BED—
LEASES.
A town is not liable in damages to one to whom it has leased oyster ground in a navigable river for eviction caused by the town constructing a bridge across the river over the oyster ground, since the town exercised governmental powers in erecting the bridge; the same being part of the public highway.

Appeal from trial term, Nassau county.

Action by Edward Hall against the town of Oyster Bay. From a judgment in favor of defendant, and an order denying plaintiff's motion for a new trial, plaintiff appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCH-BERG, JENKS, and SEWELL, JJ.

Foster L. Backus, for appellant.
·George B. Stoddard, for respondent.

JENKS, J. The plaintiff appeals from a judgment entered upon the dismissal of his complaint at trial term on the proof at the close

of his case.  He sued the town of Oyster Bay for damages, and complained that the defendant in 1894 had leased certain oyster ground to him for 15 years; that he went into possession, and that in 1897 the defendant, by its town board, authorized and directed that a bridge should be built across the land; that the bridge was built, whereby he was evicted; that he had performed all of the covenants and conditions of his lease.  There was no question of the plaintiff's title, or of the physical invasion upon the land.  The proof that we need to consider is in the minutes of the town board read in evidence, supplemented by the admission of the defendant at the trial. The minutes show that in 1896 Mr. C. H. Platt, C. E., submitted to the town board plans for a bridge which "we" propose to erect, to connect the Shore road with Bayville at Allen's Point, and petitioned for a grant of application for the necessary authority to act, so that he could have the plans approved by the secretary of war, and prepare for the early construction of the bridge.  It does not appear that Mr. Platt held any official position, and it may be inferred that he was the engineer who represented the private parties.  The town board thereupon resolved "that the plan for a plan [sic] over Middle Neck Creek inlet to connect the Shore road ending at Allen's point with Bayville be, and the same time [sic] are hereby, approved, and that C. H. Platt be, and he hereby is, authorized to construct the same."  Later the town board resolved that, having approved the plans for C. H. Platt, and having given him authority to construct the bridge, and the secretary of war having approved the plans, and having stipulated that the construction be supervised by the United States army engineer in charge of the district, "the town of Oyster Bay hereby does accept and will maintain the bridge when completed in accordance with said plans, if satisfactory to the town board, and it is understood that the town will not be liable for any damages during the construction of the same."  In May, 1897, the minutes show that the plan and specifications for the proposed bridge over Mill Neck inlet were filed with the clerk by Mr. C. H. Platt, C. E.; that said plans and specifications were then submitted to Mr. W. H. Browne, "the engineer," for his approval.  Later it appears that "Engineer Browne" submitted his report on the plans and specifications of the proposed bridge at Allen's Point, and he was authorized to consult with Mr. Platt, with a view to some alteration in said plans.  In September a minute was made that owing to the incomplete report from the parties representing the bridge "as to the condition financially, and as to its condition for its acceptance by Major Adams for the war department, the board saw fit not to accept such bridge until more satisfactory reports were received."  Finally, in 1897, these resolutions were adopted by the town board:

"Whereas, application was made to the town board of Oyster Bay at a meeting held September 29, 1896, by the people of Center Island and vicinity, for permission to construct a bridge at Allen's Point; and whereas, said permission was duly granted by said board; and whereas, the board of supervisors of Queens county and the war department did duly grant such permission (said creek being a navigable stream); and whereas, the said bridge was duly constructed in a suitable manner, and is this day turned over to the town of Oyster Bay free of all liens and incumbrances: Resolved, that the

town board of Oyster Bay do accept the said bridge in behalf of the town of Oyster Bay, and hereafter assume control and management thereof; and the town clerk was instructed to notify H. M. Adams, army engineer, to that effect. The highway commissioners were authorized to have built at Bayville bridge a building, according to plans and specifications submitted, for the accommodation of the bridge tender on said bridge."

The defendant's counsel admitted at the trial that "the bridge was a charge of the highway commissioners at the present time,— part of the public highway,—and that the highway commissioners hire the bridge tender."

The record is not at all satisfactory, in that it fails to indicate the theory upon which the builders of the bridge and the various authorities acted. The final minute throws some light, in that it provides that "whereas, the board of supervisors of Queens county and the war department did duly grant such permission (said creek being a navigable stream)." There is further light gained from the statement of the learned counsel for the defendant, in answer to the inquiry of the learned trial justice, that the bridge "was built by private individuals, and after it was built it was donated to the town; the town merely accepting it,—taking hold of it." I infer that either the private individuals at the time represented by Mr. Platt, C. E., or the town, applied to the board of supervisors, under section 62 of the county law; that the consent of the United States governmental authority was required, because requisite under the acts of congress (People v. Board of Sup'rs of Queens Co., 142 N. Y. 271, 276, 36 N. E. 1062); and that for further assurance, and on the theory that a public bridge was a town charge (section 130, Highway Law), the permission of the town board was obtained, pursuant to the provisions of section 10 of the highway law, which has been held broad enough to authorize the erection of a new bridge (People v. Town Board of Town of Campbell, 92 Hun, 588, 36 N. Y. Supp. 1062; People v. Smith, 83 Hun, 432, 31 N. Y. Supp. 749; Huggans v. Riley, 125 N. Y. 88, 25 N. E. 993). It is not necessary to the decision to discuss whether the acts of the town board were ultra vires, for the reason that, if they were, such acts would not avail the plaintiff in this action against the town. Speir v. City of Brooklyn, 139 N. Y. 6, 34 N. E. 727, 21 L. R. A. 641, 36 Am. St. Rep. 664, and authorities cited. The complication is due to the fact that the bridge was paid for by private persons, instead of by taxation, and the town accepted the fabric as a donation of a public bridge. The strongest statement in favor of the plaintiff is that the town occupies as to him the same position as if it had constructed the bridge. If this action cannot be maintained on that theory, it must fail. Our highest court has held that a public bridge is a public highway, and, although the duty of building and maintaining such a bridge is charged upon a county or a town, it is none the less a duty public and governmental. Markey v. Queens Co., 154 N. Y. 675, 49 N. E. 71, 39 L. R. A. 46. The duty of building such bridge is cast upon the town, through its commissioners of highway. If, in the performance thereof, the town, acting by its commissioners, had constructed the bridge upon these lands, no action would lie against the town in the absence of express statutory authority.

Markey v. Queens Co., supra; Lefrois v. Monroe Co., 162 N. Y. 563, 57 N. E. 185, 50 L. R. A. 206. No proof is given to bring the case within the exceptions to the general principle noted in such cases as Hill v. City of New York, etc., 139 N. Y. 495, 503, 34 N. E. 1090; Morton v. Same, etc., 140 N. Y. 207, 212, 35 N. E. 490, 22 L. R. A. 241. There is a manifest distinction between the liabilities of cities, municipal corporations proper, as they are termed, and counties and towns. I am aware that another view can be taken, though it has not been urged upon the court by counsel, namely, that this, in effect, is the construction by the town of a bridge upon its own land, to the eviction of its tenant in possession, and that therefore the doctrine of the Lefrois Case does not apply. The question is not free from doubt. But I am inclined to think that the status upon which the case must be determined is not that the town, in effect, constructed a bridge upon its own lands, in violation of its lease to the plaintiff in possession, but that the town, in constructing a bridge over a navigable stream, incidental to that work, built the bridge in part upon lands which, though owned by it, were then, in the eye of the law, the realty of the plaintiff. The act of the town in building the bridge, or in having it built for it, and then constituting it a public bridge, if this was done, was an act of sovereign power; and I think that, in the absence of liability declared by statute, the plaintiff cannot maintain this action against the town.

The judgment and order should be affirmed, with costs. All concur.