IN RE DECKER, ALLEGED NEGLECTED, DEPENDENT CHILD; DECKER ET AL., APPELLANTS.

(No. 15-83-11 — Decided August 17, 1984.)

*Young, Steele & Taylor* and *Kevin E. Taylor,* for appellants.

*Stephen E. Keister,* prosecuting attorney, for state of Ohio.

*Michael W. Kirkendall,* for guardian ad litem.

GUERNSEY, J. This is an appeal by Howard Decker and Carol Decker, the natural parents of Rebecca Ann Decker, from a judgment of the Juvenile Division, Court of Common Pleas of Van Wert County, finding Rebecca (born May 12, 1981) to be a dependent child and committing her to the permanent custody of the Van Wert County Department of Welfare. The appellants' assignments of error are, respectively, as hereinafter set forth.

I. "The trial court committed prejudicial error by allowing Dr. Antoine Demosthene to testify as to privileged communications made to him by his patient."

II. "The trial court committed prejudicial error by allowing Dr. Allan Schneiberg and Social Worker Nancy Gray to testify as to privileged communications made to them by their patients."

Pursuant to the complaint of one Diana Miller, otherwise unidentified, filed on September 4, 1981, seeking an order of dependency, neglect and temporary custody, the child involved was ordered into immediate shelter care with temporary custody in the Van Wert County Department of Welfare. On July 22, 1982, a reunification plan was filed providing, among other things, that the parents will participate in mental health counseling and that "Howard shall not leave Rebecca alone in the home with Carol until Dr. Demosthene, Carol's psychiatrist, feels she is capable of properly caring for the child without risk of injury to the child." On November 8, 1982, the reunification plan was extended to February 1, 1983. On February 11, 1983, a complaint was filed by Nancy Soldner, a social worker, on behalf of the Van Wert County Welfare Department, seeking a determination of dependency and neglect and an order of permanent custody in that department.

On trial, over the objection of the parents, the testimony of Dr. Demosthene, a psychiatrist, was adduced as to the mental condition of Carol Decker, as determined while his patient from sometime in 1981 until the trial; the testimony of Dr. Schneiberg, a psychologist, was adduced as to the mental condition

of Howard Decker as determined while his patient while he was director of the Van Wert Mental Health Center; and the testimony of Nancy Gray, a "Social Worker in the Van Wert County Health [Center]," since January 1982, was adduced as to therapy sessions and observations she had while so employed of Carol Decker and Howard Decker.

The appellants have claimed that to permit this testimony by the psychiatrist violated the privilege guaranteed by R.C. 2317.02(B), that by the psychologist violated the privilege guaranteed by R.C. 4732.19, and that by the social worker was violative as to both of these statutory privileges in that the social worker was employed in the same office as the psychiatrist and the psychologist. The appellee claims the privileges were waived, that the relationships were products of the reunification plan and not privileged, and that the privileges, if any, are negated by the paramount considerations of the welfare of the child where the mental health of the parents is a primary issue.

In that each of the parents, even by the testimony of Doctor Shamberg, their own witness, is schizophrenic in varying degrees, any waiver given by them might be subject to question on the basis of their competency. We conclude that the challenged evidence was not shown to be admissible by reason of the execution of written waivers.

The Second District Court of Appeals held in the similar case of *In re Smith* (1982), 7 Ohio App. 3d 75, 78, motion to certify record overruled (July 7, 1982), No. 82-809:

"The rationale for excluding material evidence offered by a treating physician is to encourage open disclosure by the patient to the doctor in order to facilitate proper diagnosis and treatment. *In re Winstead* (1980), 67 Ohio App. 2d 111, 114 [21 O.O. 3d 422]. As is further stated in *In re Winstead:*

" '* * * The crucial prerequisite for creation of the privilege is the voluntary consultation by the patient. This must be present to create the privilege in the patient, for if the patient is not voluntarily seeking help, then the underlying rationale for the privilege is not present, *i.e.,* the promotion of free and full discourse between physician and patient. Thus, there is no reason to exclude the relevant and material testimony of such physician.' *Id.* at 115."

Based on this concept, claim is made that the confidential relationships arose from the reunification plan. However, such was not the testimony of those whose testimony was challenged, it appearing that their association with the parents had other and earlier beginnings and was based on other considerations. Moreover, though from a close examination of the reunification plan it appears that it contemplates that the parents will participate in "mental health counseling," it does not appear that it contemplates that they will submit to testing, observation and examination to provide expert testimony as to their respective mental conditions.

Finally, the appellee claims that the challenged testimony was admissible because the public policy or interest prevailing with respect to the custody of the child is paramount to the preservation of privilege in respect to communications between workers in the mental health field and their patients or clients. This priority is evidenced by a line of cases in New York and elsewhere characterized by the case of *Perry* v. *Fiumano* (1978), 61 App. Div. 512, 403 N.Y.Supp. 2d 382. Although this concept is of compelling interest, particularly in a situation where the mental condition or capacity of the parent, or parents, is the central issue in the determination of dependency or neglect of a child needing the protection of the state, the cited decision demonstrates that it is based on provisions found in the New York Family Court Act, Sections 1011

and 1046(a)(vii), not similarly found in the statutes of Ohio, the Ohio statutes making no exception, in the circumstances of this case, to the privileges attaching to the communications between psychiatrist and patient, psychologist and patient (or client), and to the privilege, if it exists, between social workers employed in the office of the psychiatrist and psychologist and client.

It does not follow, however, that error, if any, in the admission of the challenged testimony was reversible error. Civ. R. 61 prescribes that "[n]o error in either the admission or the exclusion of evidence * * * is ground for * * * disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice," and the "court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

Here the parents not only closely cross-examined the challenged witnesses, and offered testimony of their own witness, Dr. Shamberg, a clinical psychologist, agreeing in many aspects to the challenged testimony, but additional evidence by other witnesses was offered on the complaint tending to prove the same things as to the parents' mental condition as did the challenged testimony.

In *Thayer* v. *Luce* (1871), 22 Ohio St. 62, the Supreme Court held:

"The admission of incompetent testimony for the successful party, though excepted to at the time by the adverse party, does not necessarily entitle the latter to a reversal of the judgment. If the whole testimony in such case be placed on the record, and it appear to the reviewing court that the rejection of the incompetent testimony could not have changed the result of the trial, the error can not be considered as prejudicial to the party excepting."

In *Evans* v. *Reynolds* (1877), 32 Ohio St. 163, the Supreme Court held:

"3. A judgment will not be reversed on error for the erroneous admission of evidence, where it appears from the record that the fact which the evidence tended to prove was admitted by the party seeking the reversal, and that the evidence was, therefore, in no way prejudicial to him."

See, also, 5A Corpus Juris Secundum (1958) 1007, 1033, Appeal & Error, Section 1728, note 88, and Section 1735b.

Here, Dr. Shamberg not only testified to the basic instability and mental illness of the father suffering from schizophrenia in various ways, and alluded to the mental illness of the mother, but testified that the father was a frequently very angry person, suffering among other things from eccentric behavior, illogical thinking, and reacting adversely to the stress of the agencies monitoring him.

The testimony of various social workers and relatives of the appellants, who had observed the conduct of both the appellants, though it may have lacked expertise to establish mental illness of the character and type identified by the experts, disclosed, if nothing else, the dependency of the minor child in the aspects defined by R.C. 2151.04.

We conclude that the rejection of the testimony claimed to be incompetent would not have changed the result of the trial, that testimony adduced by the appellants tended to prove the same facts as did the challenged testimony, that refusal to disturb the judgment is not inconsistent with substantial justice, that the substantial rights of the parties are not affected, and that there was no prejudicial error of the trial court in the particulars assigned in the first and second assignments of error.

III. "The judgment of the trial court is not sustained by clear and con-

206

vincing evidence and is contrary to law."

We have discussed some of the evidence adduced in our disposition of the first two assignments of error.

In addition to the testimony of the parents' mental conditions and their lack of ability to properly care for the child there was documentary evidence consisting of a multitude of letters or statements written by the father illustrative of his anger and paranoia. The appellants, under this assignment, argue a lack of clear and convincing evidence of the capability of the father to raise his child in that two of the experts disagreed on such capability. However, Dr. Shamberg, upon whose testimony they rely, was equivocal in his conclusions, expressing an opinion that the father would have such capability if not subjected to the stress of supervising agencies, a condition unlikely to occur.

The trial court had the responsibility of weighing all of the testimony and could choose to believe or disbelieve such testimony as it saw fit. The ultimate consideration was the dependency of the child as defined by R.C. 2151.04 which includes "any child: * * * (C) [w]hose condition or environment is such as to warrant the state, *in the interests of the child,* in assuming his guardianship." (Emphasis added.) Although the evidence may, in part, have been in conflict, there was clear and convincing evidence to support a conclusion, at least under this portion of the definition if under no other, that it was in the interests of the child for the state to assume her guardianship.

We find this assignment of error without merit.

Having found no error prejudicial to the appellants in the particulars assigned and argued, the judgment must be affirmed.

*Judgment affirmed.*

MILLER, P.J., and COLE, J., concur.