This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 DECISION AND JOURNAL ENTRY
Appellant, Debra Niner, appeals an order of the Lorain County Court of Common Pleas, Juvenile Division, that terminated her parental rights with respect to her minor children, Jessica, Brandon, and Thomas Wade. We affirm.
Ms. Niner and Todd Wade are the parents of three children: Jessica, born June 17, 1992, Branden, born July 5, 1994, and Thomas, born September 1, 1995. On December 12, 1996, Lorain County Children Services (LCCS) filed a complaint alleging that Jessica, Branden, and Thomas were dependant or neglected children. On January 15, 1997, the trial court adjudicated them dependent and neglected children, and on January 17, 1997, placed them under the protective supervision of LCCS.
A caseplan instituted in May 1997 noted that (1) Ms. Niner and Mr. Wade did not provide for the children's basic needs; (2) the children had been exposed to domestic violence between their parents; (3) the parents did not demonstrate financial or residential stability; (4) the children were inadequately supervised and had not been protected from harm; (5) Jessica had disclosed allegations of sexual abuse by a relative; (6) Ms. Niner did not have a strong maternal bond with Branden, who also displayed slight developmental delays; (7) the parents had not maintained a safe and suitable home environment; (8) Ms. Niner appeared "depressed and overwhelmed" by caring for the children; and (9) Mr. Wade exposed the children to drug use and violence. LCCS moved for a dispositional change to temporary custody on June 25, 1997, arguing that conditions in the home had worsened and that the parents had failed to comply with the case plan. The trial court granted temporary custody to LCCS on July 28, 1997. LCCS moved for permanent custody on June 18, 1998. After conducting a hearing, the trial court granted permanent custody on November 25, 1998. Ms. Niner timely appealed, raising two assignments of error.[1]
ASSIGNMENT OF ERROR I
 The trial court erred to the prejudice of Appellant and in violation of [R.C.] 2151.414, the Fourteenth and Ninth Amendments to the United States Constitution, and Article I, Section 1 of the Ohio Constitution, when it terminated the parental rights of Appellant and granted permanent custody of the minor child[ren] to Lorain County Children Services, where the evidence failed to satisfy the requisite standard of proof.
In her first assignment of error, Appellant has argued that the trial court's determination that permanent custody was in the best interest of the children was not supported by clear and convincing evidence as required by R.C. 2151.414(B). Specifically, Appellant has maintained that the testimony of an LCCS caseworker, standing alone, was insufficient to provide clear and convincing evidence that permanent custody was in the best interests of the children. She has also noted that the maternal grandmother, Doris Niner, expressed a willingness to care for the children.
Termination of parental rights is sanctioned when necessary for the welfare of a child, but is an "alternative of last resort." In re Wise (1994), 96 Ohio App.3d 619, 624. Termination of parental rights with respect to a child who is not orphaned or abandoned is governed by R.C. 2151.414(B)(1), which provides:
 The court may grant permanent custody of a child to a movant if the court determines * * *, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that * * *:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
This is a two-part inquiry, requiring courts to determine by clear and convincing evidence (1) if the child cannot or should not be placed with either parent within a reasonable time, and (2) whether it is in the best interest of the child to grant permanent custody to the petitioning agency. In re Higby (1992), 81 Ohio App.3d 466,469. When the trial court finds by clear and convincing evidence that at least one of these factors enumerated in R.C. 2151.414(E) is present, the court must also conclude that the child cannot be placed with the parent within a reasonable time or should not be placed with either parent. See id.
In this case, the trial court concluded:
 [LCCS] has been involved with this family for nearly two and a half years. * * * As a result of the parents' failure to comply with the Protective Supervision case plan and the increasing concerns about the care and safety of the children, the agency filed for temporary custody of the children[,] which was granted on July 23, 1997.
 * * * The case plan addressed issues of neglect of the children, a lack of stable housing and failure to budget, domestic violence in the home, and the emotional stability of the parents. The parents have been unable to demonstrate that they can provide a safe, stable, secure environment for the children, and have not completed counseling regarding domestic violence and emotional stability.
The court also noted that Appellant had relocated to North Carolina and had been unable to visit with the children due to legal problems and a lack of transportation. Given these findings, the trial court was required to conclude that Jessica, Branden, and Thomas could not be placed with Appellant within a reasonable time or should not be placed in her custody. See R.C.2151.414(E).
R.C. 2151.414(D) provides that in determining the best interests of a child, a court should consider all relevant factors, including but not limited to:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
Cathleen Fairbanks of LCCS testified as to Appellant's failure to comply with the ten requirements of the caseplan implemented while the children were under the protective supervision of LCCS. Objective One of that case plan required Appellant to maintain safe, stable, and sanitary housing for the children. Ms. Fairbanks testified that Appellant encountered difficulty in maintaining housing and recalled that during her involvement with LCCS, Appellant frequently found herself in the process of being evicted from housing. Ms. Fairbanks recalled that Appellant's home was dirty and that animal excrement was found on the floor on several occasions. In addition, she noted that an apartment rented by Appellant contained safety hazards.
Although LCCS provided financial counseling, Ms. Fairbanks stated that Appellant's ability to make financial decisions remained poor. Specifically, Ms. Fairbanks noted that Appellant received a significant backpayment of welfare benefits in February 1997, but that within three months her utilities had been shut off, she was unable to pay for prescriptions, and her rent was past due.
Ms. Fairbanks noted two areas of concern with respect to the safety of the children. As documented in the caseplan, Jessica had disclosed allegations that she had been sexually abused by her maternal step-grandfather. In addition, the children witnessed recurrent episodes of domestic violence between their parents after implementation of the caseplan, and Jessica reported that Mr. Wade had hit the children with a belt. Nonetheless, Ms. Fairbanks testified that Appellant allowed the children to be left alone with their father and permitted visitation between Jessica and her alleged assailant. Appellant also failed to consistently attend counseling sessions with Jessica relative to the alleged sexual abuse.
Although Appellant did receive a psychological evaluation as required by the caseplan, Ms. Fairbanks noted that she attended only four sessions of follow-up counseling in Ohio. During May 1998, Appellant attempted suicide by taking an overdose of prescription medication. Ms. Fairbanks noted a continuing lack of attention to the children's basic needs during LCCS's involvement with the family, including a lack of food in the home and inappropriate clothing for the children. Appellant did not complete parenting classes as required by the caseplan.
After temporary custody was granted to LCCS, however, and while Appellant was living with a new boyfriend, she appeared to make progress toward reunification, including consistent visitation with the children that led to several overnight visits. She displayed progress in developing a bond with Branden by spending individual time with him, but did not attend doctor's appointments with Branden or either of his siblings. Ms. Fairbanks testified that after Appellant's new relationship ended, she found herself without housing, then moved out-of-state. Her visitation with the children continued despite the relocation until October 16, 1998, when Appellant was arrested in Ohio for passing a bad check.
Although Appellant has argued that custody should have been awarded to the maternal grandmother, we note that the grandmother did not move the trial court for legal custody of the children. R.C. 2151.353(A) governs the dispositional alternatives authorized for a child who has been adjudicated dependant, providing, in part:
 If the child is adjudicated [a] * * * dependant child, the court may make any of the following orders of disposition:
(1) Place the child in protective supervision;
 (2) Commit the child to the temporary custody of a public children services agency, a private child placing agency, either parent, a relative residing within or outside the state, or a probation officer for placement in a certified family foster home or in any other home approved by the court;
 (3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child[.]
(Emphasis added.) Because Ms. Niner did not move for custody of the children, the trial court was neither required nor authorized to consider a disposition of legal custody with her. See R.C.2151.353(A)(3); In re Burmeister (Apr. 14, 1999), Summit App. No. 19157, unreported, at 11.
A review of the record leads this court to the conclusion that the trial court's disposition of permanent custody was supported by evidence sufficient to "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In re Holcomb (1985), 18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. Appellant's first assignment of error is, therefore, overruled.
ASSIGNMENT OF ERROR II
 The trial court committed prejudicial error by allowing clinical counselor Michelle Flanigan to testify as to privileged communications made to her by Appellant in violation of the psychologist privilege as set forth in Ohio Revised Code Section 4732.19.
In her second assignment of error, Appellant has argued that the trial court incorrectly permitted testimony by her psychologist despite the fact that Appellant had not waived the psychologist-patient privilege. Appellant did not object to Dr. Flanigan's testimony at trial. Accordingly, she has waived this issue on appeal in the absence of plain error. In re Smith
(1990), 64 Ohio App.3d 773, 780. Assuming, arguendo, that this issue was properly presented on appeal, we conclude that any error by the trial court was harmless under the facts of this case.
Pursuant to R.C. 2317.02(B)(1), a physician may not testify with respect to communication made by a patient in the course of the physician-patient relationship. Communications between a licensed psychologist and a client are privileged to the same extent. R.C. 4732.19. An exception to the privilege exists, and a psychologist may be compelled to testify, when the client gives express consent. See R.C. 2317.02(B)(1)(a)(i).
Appellant was not present at the hearing to waive the psychologist-client privilege.[2] Her attorney correctly noted that she was unable to waive the privilege on behalf of her client. The trial court ordered Dr. Flanigan to testify after both parties noted that Appellant was ordered to undergo psychological testing as part of the caseplan.
In In re Smith (1982), 7 Ohio App.3d 75, the Second District Court of Appeals established a bright line test for determining whether a psychologist-patient privilege is applicable in permanent custody cases. Specifically, that court noted that no psychologist-patient privilege exists where "the crucial prerequisite for the creation of the privilege, the voluntary consultation by the client," is not present. Id. at 78. The court has since retreated from the breadth of its holding inSmith, concluding that "the mere fact of involuntariness" is not the only consideration to be employed in determining whether the privilege exists. In re Wieland (July 9, 1999), Montgomery App. No. 17646, unreported, 1999 Ohio App. LEXIS 3217, at *6. InWieland, the court stated that the rationale undergirding the privilege is present, and the privilege applies, when a parent is ordered to undergo treatment pursuant to a caseplan for the purpose of remedying conditions in the home and permitting reunification. Id. at *7-8. In that situation:
 if a parent is fearful that any communications with her [psychologist] will not be privileged, she may not be open and truthful during treatment, thereby undermining the effectiveness of treatment and ultimately defeating the goal of remedying the reason for the removal of the child.
Id. at *8. In contrast, the court noted that the privilege does not apply in situations in which the client undergoes a court-ordered examination for forensic purposes. Id. at *6.
Similarly, this court has concluded:
 [W]e do not find that an exception to the psychologist client privilege exists simply by virtue of the fact that this is an action for permanent custody and the parents were required to seek counseling under the terms of the reunification plan approved by the court. * * * The underlying privilege is to encourage open disclosure by the patient to the doctor in order to facilitate proper diagnosis and treatment[.] * * *
 The fact that [the parents] were obliged to seek counseling and did not do so merely of their own choosing, does not mi[t]igate against those policy considerations supporting application of the privilege.
In re Russell (Aug. 26, 1987), Summit App. No. 12965, unreported, at 5. Accordingly, the fact that Appellant was ordered to consult Dr. Flanigan as a component of her caseplan does not negate the privilege described in R.C. 2317.02(B)(1) and R.C. 4732.19. As noted supra, however, there was clear and convincing evidence from which the court could conclude that permanent custody was in the best interest of the children without considering Dr. Flanigan's testimony. Because Appellant was not prejudiced by the admission of the privileged testimony, any error in this respect is harmless. See In re Decker (1984), 20 Ohio App.3d 203, 204-05;Russell, supra, at 5-6. Appellant's second assignment of error is overruled.
Appellant's assignments of error are overruled. The judgment of the trial court is affirmed.
Judgment affirmed.
 KK
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ____________________________ LYNN C. SLABY FOR THE COURT
CARR, J., WHITMORE, J., CONCUR.
[1] Mr. Wade has not appealed the judgment.
[2] During the hearing, the parties agreed that Appellant had expressly waived the privilege at some point in the past, but that the waiver had expired. This court has been unable to identify a waiver in the record and will, therefore, assume the accuracy of the representations made during the hearing.