JOSEPH LEFROIS, Respondent, v. THE COUNTY OF MONROE, Appellant.

1. COUNTIES — LIABILITY FOR ACTS OF OFFICIALS IN MAINTAINING A NUISANCE. A county, which owns and maintains, for public purposes, a penitentiary, almshouse and farm used therewith, acts in a governmental capacity and is not liable for the acts of the officials controlling them, in permitting sewage and night soil from the buildings to be spread over the farm, thereby creating and continuing a nuisance to the damage of the land and stock of a neighboring owner, and he cannot maintain an action against the county for an injunction restraining such nuisance and for damages caused thereby.

2. REMEDY. *It seems,* that the remedy of the neighboring owner is to proceed against the board of supervisors and the officers in control of the penitentiary and almshouse to have a continuance of the nuisance enjoined.

*Lefrois* v. *County of Monroe,* 24 App. Div. 421, reversed.

(Argued January 25, 1900; decided May 1, 1900.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered March 1, 1898, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*John Desmond* for appellant. The defendant is not liable for the torts of its public officers while in the performance of duties connected with its public institutions, on the ground that the services performed in and about them are for the public good; in obedience to law, in which the defendant has no particular interest, and from which it derives no particular benefit in its corporate capacity; that neither the board of supervisors nor the officers elected or appointed by it to superintend these institutions are the agents or servants of the county of Monroe, but all of them act as officers charged with a public service for whose acts in the discharge of official duty no actions lie against the county. (*Markey* v. *County of Queens*, 154 N. Y. 675; 1 Dillon on Mun. Corp. [4th ed.] §§ 23, 27, 963–965; *Hughes* v. *County of Monroe*, 147 N. Y. 49; *Maxmilian* v. *Mayor, etc.*, 62 N. Y. 160; *Wehn* v. *Gage*, 5 Neb. 494; *Threadgill* v. *Anson County Comr.*, 99 N. C. 352; *Albrecht* v. *County of Queens*, 84 Hun, 399; *Alamango* v. *Supervisors of Albany Co.*, 25 Hun, 551; *Simmonds* v. *Clay Co.*, 71 Ill. 355; L. 1892, ch. 686, § 2; *Hollenbeck* v. *Winnebago Co.*, 95 Ill. 148; *Smith* v. *City of Rochester*, 76 N. Y. 510.)

*J. A. Stull* for respondent. The contention of the appellant that this action will not lie, or that the plaintiff is remediless, is without merit. (*Anthony* v. *Adams*, 1 Met. 284; *Lawrence* v. *Fairhaven*, 5 Gray, 110; *Perry* v. *Worcester*, 6 Gray, 544; *Parker* v. *Lowell*, 11 Gray, 354; *Wheeler* v. *Worcester*, 10 Allen, 591; *Bigelow* v. *Inhabitants of Randolph*, 14 Gray, 544; *Bailey* v. *Mayor, etc.*, 3 Hill, 531; *Oliver* v. *Worcester*, 102 Mass. 489; *Neff* v. *Wellesley*, 148 Mass. 493; *Haskell* v. *New Bedford*, 108 Mass. 208.) To sustain the

contention of the appellant would result in depriving the plaintiff of the full use and enjoyment of his property without compensation, and so violate the spirit if not the letter of the Constitution, thus exalting the protection of the county above that of the state itself. (*Schussler* v. *Hennepin County Comrs.*, 67 Minn. 412; *Chester County* v. *Brower*, 117 Penn. St. 647; *Riddle* v. *Delaware County*, 156 Penn. St. 643.)

CULLEN, J. The action is brought to restrain the continuance of a nuisance and for damages. The complaint alleged ownership and occupation by the plaintiff of a tract of land in the town of Brighton, county of Monroe; that the defendant owned a tract of land near plaintiff's premises on which it maintained the county penitentiary and the county almshouse, and until the sale of a portion of the premises to the state, an insane asylum; that the defendant owned and possessed another tract of land or farm across the road from that first mentioned; that a stream ran along said lands, and also along those of the plaintiff; that the defendant discharged the night soil, offal and garbage from the penitentiary, almshouse and insane asylum into said stream until the year 1883 when, in an action brought against the board of supervisors of the defendant, it was restrained from further permitting sewage to run into the waterway; that after said time and until the commencement of the action sewage and night soil were spread over the farm or tract of land on the opposite side of the road from the buildings, and that thereby the defendant created a nuisance to the great damage of the plaintiff's land and stock. The answer admitted the ownership of the parcels of land described in the complaint and denied the other allegations therein contained. The cause was tried at Special Term, and the learned court found, as matter of fact, that the defendant had maintained the nuisance charged in the complaint, and awarded to the plaintiff $600 for damages and an injunction perpetually enjoining and restraining the defendant from permitting any sewage or other foul or filthy matter from defendant's buildings or premises to run into the stream

mentioned, or to flow in any way over or past the lands of the plaintiff in such manner as to pollute the air thereon or the waters of the stream.    The judgment entered on this decision was unanimously affirmed by the Appellate Division.

W.e are, therefore, confined in our examination to the question whether the facts, as found, sustain the conclusions of law, and .to the consideration of any legal errors duly raised by exceptions as to the reception or rejection of evidence.

The facts alleged in the complaint and found by the court show, conclusively, that the county of Monroe acted in the premises in its governmental capacity, and it consequently follows that the conclusions of law based thereon holding it liable in damages to the plaintiff cannot be sustained.

It is clearly alleged and found that the county of Monroe for twenty years has been the owner and in possession of certain lands on which are located the penitentiary, almshouse and, prior to 1892, the Monroe county insane asylum ; also, a farm of about sixty acres opposite the above premises on which have been constructed two large tanks or reservoirs, into which are introduced pipes running from said buildings conducting the sewage thereof, except the night soil of the penitentiary.

Few questions have given rise to more diversity of judicial opinion or greater conflict in judicial decisions than that of the liability of municipal corporations for the acts of their officers or servants.    In every state in this country, as far as we know, that follows the common law, distinction is drawn between the class of cases in which the municipality is held liable for the torts of its agents and those in which it is held exempt.    But not only the grounds on which the distinction is placed, but the line of cleavage itself between liability and non-liability differs greatly in different jurisdictions.    Which distinction is the sound one, and whether any distinction will logically stand the test of final analysis, has been questioned. Nevertheless, in this state the rule governing the liability or non-liability of a municipal corporation has for the past twenty-five years been settled by an unbroken line of authority,

although there have been at times differences of opinion as to the application of the rule. In *Maxmilian* v. *Mayor* (62 N. Y. 160) there was stated the broad general doctrine that two kinds of duties are imposed on municipal corporations, the one governmental and a branch of the general administration of the government of the state, the other, *quasi* private or corporate; that in the exercise of the latter duties the municipality is liable for the acts of its officers or agents, while in the former it is not. It was there held that the care and custody of criminals and paupers imposed on the commissioner of charities of the city of New York was governmental, not corporate, and that the city was not liable for the negligence of the employees of that board. This doctrine has been steadily adhered to by this court. (*Ham* v. *Mayor, etc.,* 70 N. Y. 459; *New York & Brooklyn Saw Mill & Lumber Co.* v. *City of Brooklyn,* 71 N. Y. 580; *Hughes* v. *County of Monroe,* 147 N. Y. 49; *Springfield Fire & M. Ins. Co.* v. *Village of Keeseville,* 148 N. Y. 46.) In the *Hughes* case it was unsuccessfully sought to hold this defendant liable for an accident occurring to an employee in the insane asylum on the same premises in reference to which the present suit is brought. Judge BARTLETT there said: "In *Maxmilian* v. *The Mayor* this court laid down the rules that control this case."

It is also to be remembered that the responsibility of this defendant for the acts of its officials is not the same as that which obtains in the case of ordinary municipal corporations. If the defendant was not liable for the negligence of the officers in control of the penitentiary and almshouse prior to the County Act of 1892, it is not rendered liable by that act. In *Markey* v. *County of Queens* (154 N. Y. 675) this court held that the county was not liable for an injury occasioned by a defective bridge, with the maintenance of which the county was charged. It is sought to distinguish this case from those cited, in that here the county owns a farm which it is claimed it possesses as an ordinary proprietor and subject to the latter's duties and liabilities as to his neighbors. The same point was raised in the *Hughes* case, but the court held that

the farm was a mere incident to the maintenance of the paupers and the insane. Neither the complaint, findings, nor the judgment rendered by the court is confined to the farm; they relate to the management of the public buildings.

The learned court below was of opinion that the judgment could be upheld on the doctrine which prevails in the state of Massachusetts, and is stated in *Hill* v. *City of Boston* (122 Mass. 344). Substantially, the doctrine is that municipal corporations are not liable for negligence or misconduct in the performance of their corporate duties to persons interested in such performance, but are liable to third parties whose property rights are invaded. This rule has the merit of great clearness and easy application, but is not consistent with the decisions in this state. It would relieve the municipality from the liability for defective streets which exists with us ( *Weet* v. *Village of Brockport*, 16 N. Y. 161) and would have rendered the municipality liable, probably, in *Maximilian* v. *Mayor, etc. (supra)*, and certainly in *Ham* v. *City of New York (supra)*, in which cases it was held to be exempt.

Under the authority of the line of cases cited from this court we feel constrained to reverse this judgment. But the plaintiff is not, and has not been, without remedy. He could at any time maintain an action against the board of supervisors and the officers in the control of the public buildings and have the further continuance of the nuisance enjoined. Such a proceeding brought against specific officials who might be summarily dealt with, in case of disobedience of the judgment of the court, would be fully as efficient as a judgment against the county in its corporate character. The complaint discloses that in two actions by third parties against the board of supervisors, prior to the present suit, the plaintiffs were successful.

The judgment should be reversed and complaint dismissed, but without costs in any court.

PARKER, Ch. J., GRAY, BARTLETT and WERNER, JJ., concur; MARTIN and VANN, JJ., dissent.

Judgment reversed, etc.