MOEST et al. v. CITY OF BUFFALO AND COUNTY OF ERIE.

(Supreme Court, Appellate Division, Fourth Department. December 28, 1906.)

1. MASTER AND SERVANT—INJURIES TO THIRD PERSONS—RESPONDEAT SUPERIOR —LIABILITY OF A COUNTY AND CITY.

Laws 1871, p. 1478, c. 680, provides for the appointment by the Governor of commissioners to erect a hall for the county of Erie and city of Buffalo, and to assign to the county and city the parts to be occupied by each. Laws 1880, p. 135, c. 31, empowers the Superior Court of Buffalo to appoint trustees for the hall, and makes it the duty of the trustees to assign to the county and city the parts to be occupied by each, appoint servants, and care for the building. *Held*, that the county and city are not liable for the death of a person due to the negligent operation of an elevator in such hall; the rule of respondeat superior not applying, as the elevator operator was not appointed by nor responsible to the county and city.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 1213.]

2. COUNTIES—TORTS—LIABILITY.

A county cannot be held liable for the death of a person caused by the negligent operation of an elevator in a building partially owned by it and

occupied by courts and county officers, as a county, like the state, is not liable at the suit of a private party for damages.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Counties, §§ 209, 210.]

Appeal from Trial Term, Erie County.

Action by John Moest and Robert C. Moest, as executors of the last will and testament of Henry Moest, deceased, against the city of Buffalo and county of Erie. Judgment for plaintiffs and defendants appeal. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, NASH, and KRUSE, JJ.

Nathaniel W. Norton, for appellant county of Erie.

Louis E. Desbecker, for appellant city of Buffalo.

Walter F. Hofheins, for respondents.

NASH, J.   The action is brought to recover damages for the death of the plaintiff's intestate, Henry Moest, who, while attempting to enter an elevator in the city and county hall in Buffalo, was fatally injured by reason of the alleged personal negligence of the operator. The building in question was constructed under and pursuant to chapter 680, p. 1478, of the Laws of 1871, entitled, "An act in relation to the location and erection of public buildings for the use of Erie county and the city of Buffalo." Section 1 provides that the Governor, by and with the advice and consent of the Senate, should appoint five citizens of Erie county, commissioners, three from the city of Buffalo, and two from the towns of the county of Erie, whose duty it should be to fix upon a site in the city of Buffalo for the erection of a public building, to be known as the city and county hall, for the use of the county of Erie and the city of Buffalo as a court house, and for other public purposes, and to cause such building to be erected, completed, and furnished, ready for use, the site to be the block of land upon which the courthouses in the city were situated, or some piece of land owned by the city (the latter was selected).

Section 7:

"Upon the site so to be selected by them, said commissioners shall cause to be erected, completed and furnished ready for use, said hall, of dimensions and upon a plan which shall furnish suitable accommodations for the courts whose terms are holden in said city, and for the judges and officers thereof, and the law library of the eighth judicial district, and for all the public officers and apartments of government of the county of Erie and the city of Buffalo respectively. The said commissioners shall also determine and designate by a certificate in writing, signed by them or by a majority of them, what parts of said hall shall be assigned to the use of said courts, the judges and officers thereof, and the law library, and what parts thereof shall be assigned to the use of the county of Erie and of the city of Buffalo respectively."

By Laws of 1880, p. 135, ch. 31, the Superior Court of Buffalo was empowered and directed to appoint six freeholders as trustees of said city and county hall, four from the city and two from the towns of the county, for the term of two, four, and six years, respectively, from the time of their appointment, and every two years thereafter in like manner select and appoint two trustees who should continue for the

term of six years, in place of those whose term should expire, and to fill any vacancy for the unexpired term of any trustee, occasioned by death, resignation, or otherwise, for such unexpired term.

Section 3:

"It shall be the duty of said trustees to determine and designate by a certificate in writing, signed by them, what parts of said hall shall be assigned for the use of courts of record, whose terms are holden in said city, and the judges and officers thereof, and for the law library of the eighth judicial district, and what parts thereof shall be assigned to the use of the county of Erie and city of Buffalo, respectively."

Section 4:

"All expenses incurred for the alteration, repairing, warming, lighting, cleaning, protection and care of said hall, and for the improvement, care and protection of the grounds for the site thereof, shall be borne equally by the city of Buffalo and county of Erie, and all appropriations therefor shall be paid to said trustees and be disbursed by them for such purposes. They shall have power to employ a janitor, engineer, watchman, and such other servants and workmen as shall be required, and discharge the same at pleasure; to make such repairs thereon and refurnish the same, as shall, from time to time, be proper, and to defray all incidental expenses for the care and management thereof. * * * They shall yearly ascertain the amount required, for the purposes aforesaid, and certify the same to the board of supervisors of said county, and to the common council of said city. They shall yearly make to the board of supervisors of said county and common council of said city, a detailed account of the money disbursed by them during the year preceding. And it shall be the duty of the board of supervisors and the common council of said city, to provide in equal proportions the amount of money required for the purposes aforesaid, and place the same in the treasury of said city and county, respectively, subject to the order of the said trustees for such purpose. But the said trustees shall receive no compensation for their services, but may reimburse themselves for the necessary expenses actually incurred in the discharge of their duties."

The principal question is whether the action will lie against the city and the county for the negligent act of a servant in the employ of the trustees of the city and county hall. The rule of respondeat superior is sought to be applied. This rule is based upon the right which the employer has to select his servants, to discharge them if not competent, and to direct and control them while in his employ. The rule has no application to a case in which this power does not exist. Folger, J., in Maxmilian v. Mayor, 62 N. Y. 160–163, 20 Am. Rep. 468. In that case it was sought to make the city of New York liable in damages for the death of the plaintiff's intestate, who was struck and run over by an ambulance wagon, the property of the city, driven by an employé of the commissioners of its public charities and corrections. The facts of the case and the principle held applicable to the facts appear in a brief abstract from the opinion of the court, per Folger, J., as follows:

"Where a municipal corporation elects or appoints an officer, in obedience to an act of the Legislature, to perform a public service, in which the corporation has no private interest and from which it derives no special benefit or advantage in its corporate capacity, such officer cannot be regarded as a servant or agent of the municipality, for whose negligence or want of skill it can be held liable. · It has appointed or elected him in pursuance of a duty laid upon it by law for the general welfare of the inhabitants or of the community. He is the person selected by it as the authority empowered by law to make selections;

but, when selected and its power exhausted, he is not its agent—he is the agent of the public, for whom and for whose purposes he was selected. So that it may be that a driver of an ambulance wagon owned by the defendant is neither its servant nor underservant, for whose negligence it is responsible. How this is, is to be arrived at by the consideration of the provisions of law under which the driver took charge of and conducted the horse and wagon. It is easily gathered from the case that he was not chosen immediately by the defendant, nor by any of its agents falling within the class of its executive officers, nor was he immediately controllable or removable by it or them. He was immediately selected by, was under the immediate control of, and power of removal of the commissioners of public charities and correction. His payment came immediately from them, though the moneys therefor came out of the municipal treasury. Hence he was no nearer, at the best for the plaintiff, than a subagent of the defendant; and not that, unless the commissioners of charities and correction were agents of the defendant rather than public officers of the greater public."

The rule of respondeat superior, Folger, J., said, is based upon the right which the employer has to select his servants, to discharge them if not competent, and to direct and control them while in his employ. In Kelly v. Mayor, 11 N. Y. 436, Selden, J., said that the right of selection lies at the foundation of the responsibility of a master or a principal for the acts of his servant or agent. And in Pack v. Mayor, 8 N. Y. 225, Jewett, J., said:

"The party employing has the selection of the party employed, and it is reasonable that he who has made choice of an unskillful or careless person to execute his orders should be responsible for an injury resulting from the want of skill or want of care of the person employed; but neither the principle of the rule nor the rule itself can apply to a case where the party sought to be charged does not stand in the relation of master or principal to the party by whose negligent act the injury has been occasioned."

As thus defined, neither the city or county can be held liable under the rule of respondeat superior. In the Maxmilian Case there was stated the broad general doctrine that two kinds of duties are imposed on municipal corporations, the one governmental and a branch of the general administration of the government of the state, and the other quasi private or corporate; that in the exercise of the latter duties the municipality is liable for the acts of its officers or agents, while, in the former, it is not. Cullen, J., in Lefrois v. County of Monroe, 57 N. E. 185, 50 L. R. A. 206.

The record shows that the occupancy of the building by the city is either wholly for governmental purposes, being rooms for the boards of councilmen and aldermen, or for officers of the corporation whose duties pertain to both governmental and "quasi private or corporate" purposes. The occupancy by the county is wholly for the courts or by county officers whose duties pertain to the governmental affairs of the county. In any view of the case the county cannot be held liable. Lefrois v. County of Monroe, 162 N. Y. 563, 57 N. E. 185, 50 L. R. A. 206; Markey v. County of Queens, 154 N. Y. 675, 49 N. E. 71, 39 L. R. A. 46; Hughes v. County of Monroe, 147 N. Y. 49, 41 N. E. 407, 39 L. R. A. 33. In the Hughes Case it was unsuccessfully sought to hold the county of Monroe liable for an accident occurring to an employé in the insane asylum, and in the Lefrois Case for the acts of the officials of the county in permitting sewage and night

soil from a penitentiary and almshouse to be spread over the county farm, thereby creating and continuing a nuisance to the damage of the land and stock of a neighboring owner. In the Markey Case it was held that the county was not liable at the suit of a private individual who received injuries from a defective bridge, with the maintenance of which the county was chargeable. In the latter case, as stated in the syllabus, it is held that there is a distinction between counties as civil divisions of the state for purposes of local government and chartered municipal corporations in respect to their liability for corporate acts. And in the opinion of the court, per Gray, J., the rule is broadly stated that counties "were created for the better and more convenient government of the state, and that both upon authority and upon principle, in the exercise of those powers which appertain to local government, and which are for the public benefit, they should be no more liable for damages resulting therefrom, at the suit of a private individual, than would be the state itself."

The judgment should be reversed, and a new trial granted upon questions of law only.

Judgment and order reversed, and a new trial ordered, with costs to the appellant to abide the event, on questions of law only. All concur.