[Cite as *In re S.D-S*, 2024-Ohio-255.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE S.D-S., | : | |
| | : | No. 113010 |
| Minor Child | : | |
| | : | |
| [Appeal by Mother] | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 25, 2024

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-20-903409

***Appearances:***

Dunham Law, LLC, and Michael P. Dunham, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee*.

KATHLEEN ANN KEOUGH, A.J.:

{¶ 1} Appellant-Mother ("Mother") appeals from the juvenile court's decision awarding permanent custody of her minor child, S.D-S., to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or the "agency") after

a hearing on the agency's motion to modify temporary custody to permanent custody. After a careful review of the record, we affirm the juvenile court's decision.

## I. Sufficiency and Manifest Weight of the Evidence

{¶ 2} In her first assignment of error, Mother contends that the juvenile court's judgment was not supported by clear and convincing evidence demonstrating there were adequate grounds to grant permanent custody and that the decision was therefore against the manifest weight of the evidence. She also contends that the juvenile court's judgment violated her due process rights.

### A. R.C. 2151.414 Factors

{¶ 3} Pursuant to R.C. 2151.414, a juvenile court may grant permanent custody of a child to an agency if, after a hearing, the court determines by clear and convincing evidence that one of the factors enumerated in R.C. 2151.414(B)(1)(a) through (e) applies, and that an award of permanent custody is in the child's best interest. Clear and convincing evidence is evidence that produces in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *In re T.B.*, 8th Dist. Cuyahoga No. 99931, 2014-Ohio-2051, ¶ 28.

{¶ 4} The proper standards of review to apply in cases involving a juvenile court's decision under R.C. 2151.414 to award permanent custody of a child and to terminate parental rights are the sufficiency-of- the-evidence and manifest-weight-of-the-evidence standards, depending on the nature of the arguments raised by the parties. *In re Z.C.*, 2023-Ohio-4703, ¶ 18. Sufficiency of the evidence is a test of adequacy, while weight of the evidence depends on its effect in inducing belief. *Id.*

at ¶ 13, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When applying a sufficiency-of-the-evidence standard, a reviewing court should affirm a trial court when the evidence is legally sufficient to support the jury verdict or trial court judgment as a matter of law. *Id*. at ¶ 13. When reviewing for manifest weight, "the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a miscarriage of justice that the judgment must be reversed and a new trial ordered." *Id*. at ¶ 14, citing *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 20.

{¶ 5} As reflected in its judgment entry granting permanent custody, upon considering the R.C. 2151.414(B)(1) factors, the juvenile court found that S.D-S. had been in agency custody for 12 or more months of a consecutive 22-month period (R.C. 251.414(B)(1)(d)). This finding is supported by the record, which reflects that S.D-S. was removed from Mother's care in December 2019, shortly after she was born, and remained in agency custody continuously since that time. Indeed, Mother does not contest the trial court's "12-of-22" finding or its applicability to this matter. (Mother's brief, p. 15.)

{¶ 6} The juvenile court also found that S.D-S. cannot be placed with either of her parents within a reasonable time or should not be placed with either parent. (R.C. 2151.414(B)(1)(a)). In order to make this finding, the juvenile court was required to find that one or more of the factors set forth in R.C. 2151.414(E) was

applicable. The juvenile court found pursuant to R.C. 2151.414(E)(1) that following the placement of S.D-S. outside the home, and notwithstanding reasonable case planning and diligent efforts by the agency, the parents had failed continuously and repeatedly to substantially remedy the conditions that caused S.D-S. to be placed outside the home.

{¶ 7} The court also found pursuant to R.C. 2151.414(E)(2) that Mother has a chronic mental illness that is so severe that it renders her unable to provide an adequate, permanent home for S.D-S. at the present time and within one year after the hearing on the matter. The court also found that Father (who has not appealed the juvenile court's judgment) has a chronic chemical dependency that makes him unable to provide an adequate, permanent home for S.D-S. at the present time or within one year after the hearing.

{¶ 8} The juvenile court further found pursuant to R.C. 2151.414(E)(4) that both parents had demonstrated a lack of commitment to S.D-S. and an unwillingness to provide a permanent home for her; Mother by failing to regularly support, visit, or communicate with the child, find stable housing, and complete her case plan; and Father by his unwillingness to provide space in his home for the child to live.

{¶ 9} Mother does not contest any of these findings. Rather, she challenges the trial court's "best interest" determination.

## B. Best Interest Determination

{¶ 10} Having determined pursuant to R.C. 2151.414(B)(1)(d) that S.D-S. had been in agency custody for 12 of 22 months of a consecutive period, and pursuant to R.C. 2151.414(B)(1)(a) that S.D-S. could not be placed with either parent within a reasonable time or should not be placed with either parent, the trial court was then required to make a "best interest" determination pursuant to R.C. 2151.414(D).

{¶ 11} R.C. 2151.414(D)(1) requires that in determining the best interest of the child, the court must consider all relevant factors, including but not limited to those listed in R.C. 2151.414(D)(1). Although a trial court is required to consider each of the R.C. 2151.414(D)(1) factors in making its permanent custody determination, "there is not one element that is given greater weight than the others." *In re Schaefer*, 111 Ohio St.3d 498, 2006-Ohio-5513, 857 N.E.2d 532, ¶ 56. Further, this court has stated that only one of the enumerated factors needs to be resolved in favor of the award of permanent custody. *In re T.B.*, 8th Dist. Cuyahoga No. 110130, 2021-Ohio-2448, at ¶ 25, citing *In re Moore*, 8th Dist. Cuyahoga No. 76943, 2000 Ohio App. LEXIS 3958, 12 (Aug. 31, 2000).

{¶ 12} In its judgment entry granting permanent custody to the agency, the juvenile court noted that upon considering the R.C. 2151.414(D)(1) factors — including S.D-S.'s relationship with her parents and foster caregivers, her wishes as set forth by her guardian ad litem ("GAL"), her custodial history, and her need for a legally secure placement — the court found by clear and convincing evidence that a

grant of permanent custody was in S.D-S.'s best interest. Our review demonstrates that the record supports the juvenile court's determination.

{¶ 13} The record reflects that following the child's removal, the agency developed case plans for both Mother and Father, with the goal of reunification. Mother was referred for mental health services, but during the course of the proceedings was not compliant with those services. The agency's caseworker testified at the permanent custody hearing that Mother did not engage in mental health services or consistently take her medication from October 2022 through January 2023, and only sporadically engaged in mental health services from January through April 2023. At the time of trial in June 2023, Mother still had not been consistently attending mental health appointments or taking her medication. She was also inconsistent in communicating with her caseworker, despite the caseworker's efforts to contact Mother to discuss case plan services and arrange for home visits. Mother also failed to maintain stable and adequate housing during the proceedings. She had periods of incarceration, as well as commitments to mental health hospitals, during the proceedings, and resided intermittently with her mother and the child's father. At the time of trial, she was living in a shelter.

{¶ 14} The caseworker testified that Mother had made only limited progress on her case plan objectives, still needed to establish stable housing, and was inconsistent in addressing her mental health issues, noting that Mother "would go months at a time without addressing her mental health." The caseworker testified that given this demonstrated lack of progress, the agency did not believe that Mother

would resolve these issues in the foreseeable future, explaining that "the child's been in agency custody for a little over three and a half years and throughout that time [Mother] has not consistently addressed her mental health." The caseworker testified that even in the month prior to trial, Mother had cancelled or "no-showed" several appointments for mental health services.

{¶ 15} The caseworker testified further that Mother did not consistently take advantage of opportunities to visit S.D-S., and even when she did have visits with the child, her interaction with the child was limited. When she was living with Father, Mother would often sleep during the child's regular visits at Father's home.

{¶ 16} The caseworker testified that Father was referred to services to address concerns regarding his substance abuse and the appropriateness of housing for the child, but did not follow through with a referral for a drug assessment. She testified further that despite her efforts to have him submit to drug testing so he could be considered as a potential candidate to care for S.D-S., Father was "very evasive" and "very aggressive verbally." She said that Father did not want to speak with her and was not willing to participate in any services. She said that S.D-S. had weekly two-hour visits with Father in his home, but these visits were never increased because Father would not submit to drug screens. The caseworker said that she repeatedly asked Father to take the steps necessary to demonstrate his ability to care for S.D-S. long term, but he refused all her efforts from July through December 2022.

{¶ 17} The caseworker testified that Father lived in a home with his mother and although he claimed to have access to the upstairs unit of the home where he lived, he never allowed the caseworker to inspect that unit, which Father said needed some remodeling, to determine its suitability. The caseworker said that when she visited Father's home on June 6, 2023, shortly before trial, he still had not obtained a bed for the child and although Mother, who sometimes lived with Father, had moved to the shelter, her belongings were still in the bedroom, so there was no room for S.D-S. in the home.

{¶ 18} S.D-S.'s maternal grandmother testified that S.D-S. had been living with her for about three years at the time of trial. She described Mother's mental health struggles that led to her hospitalization in 2017 and the loss of custody of her two older children. She said she had tried to assist Mother with her mental health struggles since 2017, noting that Mother had been hospitalized for mental health issues at least two times a year, and that her last such hospitalization was in 2022. She said she had observed Mother's erratic behavior, unclear thinking, and lack of medication compliance, and testified that based on her experience and knowledge of Mother's issues, she did not believe that Mother was capable of providing appropriate care for S.D-S. Despite her misgivings about Mother and Father, the grandmother testified that she would allow Mother and Father to have continued contact with S.D-S. if their visits did not put her or S.D-S.'s welfare at risk.

{¶ 19} The agency caseworker testified that CCDCFS was seeking permanent custody because Mother did not have stable housing and had not been consistently

addressing her mental health issues or completing her case plan, and Father had not shown that he was committed to S.D-S. She said that S.D-S. had been living with her grandmother since June 2020, was bonded with her, and was able to see her siblings every two weeks at her grandmother's house.

{¶ 20} The child's GAL recommended that it would be in S.D-S.'s best interest to grant permanent custody to the agency. The GAL noted that S.D-S. had spent about 75 percent of her life with her maternal grandmother and was "thriving" in the grandmother's home. The GAL also noted that although S.D-S. looked forward to visits with her father, Father had demonstrated a lack of commitment to the child because "after three and a half years, if you can't follow through, for whatever the reason may be, you're not committed to this child as her primary caregiver."

{¶ 21} On this record, we find that the trial court's determination that permanent custody is in S.D-S.'s best interest is supported by clear and convincing evidence. Father offered no evidence at trial to rebut any of the agency's evidence, and although Mother testified in her own defense, she offered nothing more than a brief statement that she had made progress in dealing with her issues and she believed that S.D-S. should be with her biological parents. The agency's evidence, however, overwhelmingly demonstrated that a grant of permanent custody to the agency was in S.D-S.'s best interest because Mother had been inconsistent about addressing her mental health issues, did not have adequate housing, was unwilling to complete her case plan, and demonstrated her lack of commitment to S.D-S. by

failing to regularly support, visit, or communicate with her. Father likewise had failed to demonstrate his commitment to S.D-S.

{¶ 22} Furthermore, the evidence demonstrated that S.D-S. had been in agency custody for nearly three years. R.C. 2151.414(D)(1)(d) instructs a court to consider a child's need for a legally secure placement and whether such placement can be achieved without a grant of permanent custody. As this court has recognized, "neglected and dependent children are entitled to stable, secure, nurturing and permanent homes in the near term, and are not required to languish in legally insecure placements for years while natural parents are unwilling or unable to correct serious parenting deficiencies." *In re T.S.*, 8th Dist. Cuyahoga No. 92816, 2009-Ohio-5496, ¶ 35, citing *In re Mayle*, 8th Dist. Cuyahoga Nos. 76739 and 77165, 2000 Ohio App. LEXIS 3379 (July 27, 2000). In light of Mother's repeated failures over the lengthy proceedings to complete her case plan and address the issues that led to S.D-S.'s removal, it is apparent that S.D-S.'s need for a legally secure placement could not be satisfied other than by a grant of permanent custody to the agency.

## C. Due Process

{¶ 23} Mother also contends that the termination of her parental rights violated her due process rights because the juvenile court "used her mental disability, her child's disability, and her poverty against her in terminating her right to care for her child." (Mother's brief, p. 16-17.) Mother's argument is without merit.

{¶ 24} Mother was not denied due process in any of the proceedings. She was provided with court-appointed counsel and a guardian ad litem, with notice and an opportunity to be heard, and all process due her in relation to the permanent custody hearing and other proceedings.

{¶ 25} Moreover, Mother's unsupported claim that the juvenile court relied on the child's disability in terminating Mother's parental rights fails to account for the record, which established that S.D-S. had medical issues when she was born but those issues had long been resolved at the time of the permanent custody hearing. Indeed, S.D-S.'s grandmother testified that although S.D-S. was born with a hole in her heart, the cardiac issue had been resolved and S.D-S. was healthy and "doing very well." Likewise, there is no indication in the record that the agency's case was at all reliant on a claim of Mother's poverty, nor did the trial court even allude to such a finding in its judgment. Mother's reference to testimony regarding her inconsistent housing to support her claim that "financial resources were considered by the trial court" (Mother's brief, p. 20) fails to acknowledge that there was no suggestion that Mother's housing instability was due to a lack of financial resources as opposed to her chronic mental instability.

{¶ 26} Finally, in addition to considering Mother's mental illness and its resulting negative effects on S.D-S. in determining that S.D-S. cannot or should be placed with Mother, the trial court found that Mother had neglected S.D-S. by failing to regularly visit, communicate with, or support her, or obtain adequate housing to provide a permanent home for her. R.C. 2151.414(E)(4). The juvenile court also

found that Mother had demonstrated her unwillingness to provide basic necessities to S.D-S. or prevent her from suffering emotional and mental neglect by her unwillingness to complete her case plan so she could provide care for the child. R.C. 2151.414(E)(14). Any one of these factors alone is sufficient for the juvenile court to find that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. *In re L.W.*, 8th Dist. Cuyahoga No. 107708, 2019-Ohio-1343, ¶ 29. Accordingly, although the trial court considered Mother's mental illness in granting permanent custody of S.D-S. to the agency, it was not the sole determining factor in the court's permanent custody decision.

{¶ 27} Thus, Mother's citation to *In re D.A.*, 113 Ohio St.3d 88, 2007-Ohio-1105, 862 N.E.2d 829, is misplaced. In *In re D.A.*, the Ohio Supreme Court noted that R.C. 2151.414 does not allow for the termination of parental rights based on a parent's cognitive abilities alone. *Id.* at ¶ 20. Here, it is apparent that the juvenile court's determination that S.D-S. could not be placed with Mother within a reasonable time or should not be placed with her was based on factors other than only her mental health issues.

{¶ 28} In sum, we find that the juvenile court's determinations that S.D-S. could not or should not be placed with Mother and that permanent custody was in S.D-S.'s best interest were supported by clear and convincing evidence and were not against the manifest weight of the evidence. The first assignment of error is therefore overruled.

## II.  Pretrial and Evidentiary Rulings

{¶ 29} In her second assignment of error, Mother contends that the trial court abused its discretion by allowing "most" of the pretrial hearings to be conducted in her absence while she was in prison.

{¶ 30} Only two hearings were held while Mother was incarcerated; the dispositional review hearing held on March 5, 2021, at which time the court ordered the first extension of temporary custody; and the dispositional review hearing held on November 23, 2021, at which time the trial court ordered the second extension of temporary custody.  The record demonstrates that Mother was not incarcerated when the other hearings in the case occurred, although she sometimes failed to appear.

{¶ 31}  With respect to the two hearings held while Mother was incarcerated, this court is without jurisdiction to review any issues relating to these proceedings because Mother did not timely appeal the final appealable orders issued after the hearings.  "An appeal of an adjudication order of abuse, dependency, or neglect and the award of temporary custody pursuant to R.C. 2151.353(A)(2) must be filed within 30 days of the judgment entry pursuant to App.R. 4(A)." *In re H.F.*, 120 Ohio St.3d 499, 2008-Ohio-6810, 900 N.E.2d 607, syllabus.  Likewise, an order granting a motion for extension of temporary custody is also a final appealable order.  *See* R.C. 2151.353(F)(2) (upon the filing of a motion for extension of temporary custody, the court shall hold a hearing upon the motion as if the hearing were the original dispositional hearing).  Because the orders extending temporary custody were never

appealed, this court lacks jurisdiction to consider Mother's claims about the hearings. In short, Mother cannot now raise issues relating to those orders in an appeal from a subsequent order. And even if we did have jurisdiction, we note that although the hearings proceeded in Mother's absence, she benefited from the juvenile court's orders after the hearings continuing S.D-S. in temporary custody because they afforded her additional time to engage in case plan services. Accordingly, Mother was not prejudiced when the hearings proceeded during her incarceration.

{¶ 32} Mother also challenges various pretrial evidentiary rulings made by the juvenile court. As discussed above, we lack jurisdiction to consider any arguments relating to such pretrial rulings because Mother did not timely appeal from the juvenile court's adjudication of S.D-S. as neglected and its disposition awarding temporary custody to the agency, or from the orders extending temporary custody. The only proceedings we can review in this appeal are those relating to the permanent custody order, which Mother timely appealed.

{¶ 33} With respect to the permanent custody hearing, Mother contends that the trial court should have declared a mistrial when the original trial date was continued after Father appeared without a lawyer shortly after trial began. The trial court continued trial so that Father could obtain counsel and then began trial anew at a later date so that Father's newly appointed counsel could be present and hear all the testimony in the proceedings. We find no error in the juvenile court's continuance of trial.

{¶ 34} And despite Mother's argument otherwise, no "ex parte testimony" was presented at the original trial and then later relied upon by the court in rendering its permanent custody decision. An "ex parte communication" is defined as "[o]n one side only; by or for one party; done for, on behalf of, or on the application of, one party only." *Dutton v. Dutton*, 127 Ohio App.3d 348, 352-353, 713 N.E.2d 14 (7th Dist.1998), quoting *Black's Law Dictionary* 576 (6th Ed.1990). Thus, an ex parte proceeding is one that is usually held without notice to the opposing side. *Dutton* at *id*. Here, the testimony in question was given at trial and all parties were given notice and an opportunity to be heard. The fact that a party failed to timely appear does not render the testimony ex parte. Furthermore, there is no indication the juvenile court relied on any of the brief testimony given at the first trial that was interrupted by Father's appearance and then continued. Rather, the record reflects that trial began anew at a later date after Father obtained counsel.

{¶ 35} Mother also contends that the trial court allowed improper hearsay evidence at trial. Mother raised no hearsay objections at trial, however, and therefore we review only for plain error. "Plain error is found where a substantial right is affected through the erroneous admission of obvious and prejudicial testimony that serves to undermine confidence in the verdict." *In re M.H.*, 8th Dist. Cuyahoga No. 80620, 2002-Ohio-2968, ¶ 47. In other words, even if the complained of testimony is hearsay, we will not reverse the juvenile court on this issue absent prejudice to the outcome. *Id*.

{¶ 36} Hearsay is not permissible in permanent custody hearings because they are adjudicatory in nature and require compliance with the rules of evidence. *Id.* at ¶ 48, citing *In re Brofford*, 83 Ohio App.3d 869, 878, 615 N.E.2d 1120 (10th Dist.1992). However, even if improper hearsay was admitted by the trial court, Mother must show that the court actually relied on that evidence in its judgment. *In re Fountain*, 8th Dist. Cuyahoga No. 76650, 2000 Ohio App. LEXIS 672, 18 (Feb. 24, 2000). A trial judge is presumed to be capable of disregarding improper testimony. *Id.* "The erroneous admission of hearsay evidence is harmless if other evidence, apart from the erroneously-admitted evidence, has been offered to prove that which the challenged evidence was offered to prove." *In re M.H.* at ¶ 73, citing *In re Decker*, 20 Ohio App.3d 203, 485 N.E.2d 751 (3d Dist.1984).

{¶ 37} Most of Mother's hearsay challenges relate to testimony about her mental health issues. But other than her unsupported argument that "there would be insufficient evidence to sustain the court's judgment without admissible evidence being admitted," (Mother's brief, p. 25), she has not demonstrated that the court relied on any inadmissible hearsay testimony about her mental health issues in rendering its judgment. As discussed above, the record reveals ample evidence other than Mother's mental health issues that supports the court's award of permanent custody to the agency. Indeed, the juvenile court cited such evidence in its judgment entry; i.e., Mother's neglect of S.D-S. by failing to visit, communicate with, or support her; Mother's residence in a shelter, thereby demonstrating her unwillingness to provide an adequate, permanent home for S.D-S.; and Mother's

unwillingness to complete her case plan so that she could provide food, clothing, and shelter for S.D-S.

{¶ 38} Mother's argument that the trial court improperly allowed the agency's caseworker to give lay opinion testimony about Mother's mental health issues is without merit because such opinion testimony is allowed. *State v. McKee*, 91 Ohio St.3d 292, 296,744 N.E.2d 737 (2001) (witnesses with firsthand knowledge are permitted to offer lay testimony where they have a reasonable basis, grounded in experience or specialized knowledge, for arriving at the opinion expressed).

{¶ 39} And Mother's argument that the trial court allowed counsel for the agency to improperly criticize Father for firing his first lawyer is a mischaracterization of the record. The record reflects that counsel argued that Father demonstrated a lack of commitment to S.D-S. because after he fired the public defender in June 2022, Father did not return to court until April 2023. Nowhere did counsel suggest, as Mother argues, that "the parents were unfit because the prosecution does not like the father's new lawyer." (Mother's brief, p. 28.)

{¶ 40} Upon our review of the record before us, we find no plain error in the trial court's determination that S.D-S.'s best interest was served by a grant of permanent custody to the agency. The second assignment of error is therefore overruled.

## III. Ineffective Assistance of Counsel

{¶ 41} In her third assignment of error, Mother contends that the trial court's grant of permanent custody should be reversed because her trial counsel was ineffective.

{¶ 42} To establish ineffective assistance of counsel, Mother must demonstrate that (1) counsel's performance was deficient; and (2) the deficient performance prejudiced her so as to deprive her of a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 98, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The failure to prove either prong of this two-part test makes it unnecessary for a court to consider the other prong. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), citing *Strickland* at 697. This two-part test has been held applicable in permanent custody proceedings. *In re Wise*, 96 Ohio App.3d 619, 627, 645 N.E.2d 812 (9th Dist.1994). In evaluating a claim of effective assistance of counsel, a reviewing court must be mindful that there are countless ways for an attorney to provide effective assistance in a given case, and it must give great deference to counsel's performance. *Strickland* at 689.

{¶ 43} Mother has failed to demonstrate that her counsel was ineffective. First, although she claims alleged error regarding counsel's handling of pretrial proceedings, as noted above, this court is without jurisdiction to consider those issues because Mother did not timely appeal the trial court's orders of adjudication and disposition. Moreover, even assuming counsel's performance at the permanent

custody hearing was somehow deficient, Mother has failed to demonstrate that she was prejudiced by counsel's performance. Indeed, Mother makes no argument that the result of the permanent custody proceeding would have been different but for counsel's alleged errors, presumably because she cannot.

{¶ 44} At the time of the permanent custody hearing, S.D-S. had been in agency custody for 12 of 22 consecutive months, thereby satisfying the first prong of the permanent custody statute pursuant to R.C. 2151.414(B)(1)(a). Mother does not dispute this finding. With respect to the trial court's best interest determination, the evidence was clear and convincing that Mother had failed to consistently engage in referred services pursuant to her case plan and did not have adequate housing at the time of trial. These facts alone required the court to find that S.D-S. cannot be placed with Mother within a reasonable time or should not be placed with her. *See* R.C. 2151.414(E)(1) (if the court determines at a hearing, by clear and convincing evidence, that following the placement of the child outside the child's home, the parent has failed continuously and repeatedly to substantially remedy the conditions that caused the child to be removed from his or her home, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent). Moreover, as discussed above, the evidence was clear and convincing that it was in S.D-S.'s best interest for the court to grant permanent custody to the agency.

{¶ 45} Because she has not demonstrated that she suffered any prejudice as a result of counsel's alleged deficiencies, Mother has not satisfied the two-prong test

for ineffective assistance of counsel. The third assignment of error is therefore overruled.

## IV. Cumulative Error

{¶ 46} In her fourth assignment of error, Mother contends that the juvenile court's judgment granting permanent custody of S.D-S. to the agency should be reversed because the cumulative effect of the trial court's evidentiary errors and counsel's ineffectiveness warrants reversal.

{¶ 47} "Under the cumulative error doctrine, 'a conviction will be reversed when the cumulative effect of errors in a trial deprives the defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal.'" *Daniels v. Northcoast Anesthesia Providers, Inc.*, 8th Dist. Cuyahoga No. 105125, 2018-Ohio-3562, ¶ 66, quoting *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 321. The cumulative error doctrine applies in civil cases. *Id*.

{¶ 48} Having found no error in the trial court's decision, we find no cumulative error. The fourth assignment of error is overruled.

{¶ 49} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, ADMINISTRATIVE JUDGE

EMANUELLA D. GROVES, J., and
SEAN C. GALLAGHER, J., CONCUR