[Cite as *In re H.C.*, 2026-Ohio-189.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

IN RE H.C.                         :

                               :

A Minor Child                      :

                               :

[Appeal by Mother]                 :

No. 115276

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** January 22, 2026

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD-24911635

---

### *Appearances:*

Michael P. Dunham, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee*.

KATHLEEN ANN KEOUGH, J.:

{¶ 1} Appellant-Mother appeals the juvenile court's judgments overruling her objections and adopting the magistrate's decisions that adjudicated her child abused and neglected and awarded temporary custody to appellee Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency"). For the reasons that follow, this court affirms the juvenile court's decisions.

## I.  Facts and Procedural History

{¶ 2}  In November 2024, the agency filed a complaint alleging that H.C., then 18-months old, ("the child") was abused and neglected and requesting temporary custody.  The complaint alleged, in relevant part, that (1) the child suffered sub-acute corner fractures to her left femur, which medical professionals determined were nonaccidental in nature and that the child's Mother and Father failed to provide a plausible explanation for the fractures; (2) the child was in pre-dispositional temporary custody from April 2024 to September 2024, due in part to unexplained fractures in both of her legs; (3) Mother and Father lacked appropriate parenting and decision-making skills, which interfered with their ability to provide necessary care for the child's safety, and both parents minimized the child's current and prior injuries; and (4) the child lost weight when she was recently returned to Mother's care, demonstrating a failure to provide for the basic needs of the child.  Following a hearing, the court committed the child to the pre-dispositional temporary custody of CCDCFS.

{¶ 3}  On March 5, 2024, the parties appeared for an adjudicatory hearing, which was assigned to a magistrate.  The magistrate granted Mother's motion in limine, prohibiting the agency from offering expert testimony of medical professionals from whom the agency failed to provide expert reports.  Prior to hearing testimony, Father stipulated to an amended complaint, agreeing to an abuse and neglect finding and for the agency to have temporary custody of the child.  Mother disputed the allegations in the amended complaint and proceeded

with trial at which the agency introduced photographs, genetic testing results, and the child's medical records, and presented testimony from four witnesses: (1) Dr. Abigail Kacpura, a medical geneticist at the Cleveland Clinic Foundation, (2) Ebony Sheffey, CCDCFS social worker in the medical investigation unit, (3) Amber May, CCDCFS supervisor in extended services, and (4) Kaitlyn Kedierski, Mother's CCDCFS extended caseworker.

{¶ 4} The testimony and evidence revealed that the child suffered from multiple unexplained leg fractures while in Mother's care and custody. Despite Mother's assertion and belief that the child suffered from Osteogenesis Imperfecta, commonly known as Brittle Bone Disease (hereinafter "OI"), medical testimony and genetic testing revealed that the child did not suffer from such disease. The agency's testimony further established that the child did not suffer from any injury or fractures while in agency custody during a prior removal.

{¶ 5} Following the hearing, the magistrate issued his decision, finding the child abused and neglected. A week later, the magistrate conducted a dispositional hearing, receiving testimony from (1) Father, (2) May, and (3) Glenda Hoyle, a CCDCFS extended services caseworker. The child's guardian ad litem ("GAL") also presented his recommendation. The magistrate subsequently issued a decision granting the agency's request for temporary custody of the child, finding this disposition to be in the best interest of the child.

{¶ 6} Mother filed timely objections to both decisions, contending that (1) during the adjudication hearing, the magistrate improperly relied on hearsay

testimony contained in the child's medical records, specifically, statements made by other medical professionals, and (2) the agency failed to present clear and convincing evidence that the child was abused or neglected and that temporary custody was in the child's best interest.

{¶ 7} The juvenile court overruled Mother's objections and adopted the magistrate's decisions regarding both the adjudication and award of temporary custody, ordering them into effect. This appeal followed.

## II. The Appeal

{¶ 8} Mother raises five assignments of error. At the outset, however, we note that in Mother's second assignment of error, she challenges the juvenile court's order striking her objections to the magistrate's decision. Following a clarification order, the court noted it only struck Mother's usage of personal identifiers in her objections, not the entirety of the objections. Accordingly, Mother has withdrawn her second assignment of error as moot.

### A. Adjudication and Disposition

{¶ 9} In her first assignment of error, Mother challenges the juvenile court's adjudication and disposition. She first contends that the agency presented insufficient evidence to support an abuse and neglect adjudication and that the adjudication was against the manifest weight of the evidence. Specifically, Mother asserts that the agency failed to prove that the child was abused because the record lacks evidence to support the conclusion that the child's leg fractures indicated child abuse as opposed to accidental or unexplained means, and (2) the agency

failed to prove that the child was neglected because Mother took the child to the hospital when the injuries occurred.

{¶ 10} Pursuant to R.C. 2151.35(A)(1) and Juv.R. 29(E)(4), the juvenile court was required to determine whether CCDCFS presented clear and convincing evidence to prove that the child should be adjudicated abused and neglected. Whether the agency's evidence satisfies the clear-and-convincing evidence standard, the Ohio Supreme Court has stated:

> "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."

*In re Z.C.*, 2023-Ohio-4703, ¶ 7, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. "'Where the proof required must be clear and convincing, a reviewing court will examine the record to determine whether the trier of fact[] had sufficient evidence before it to satisfy the requisite degree of proof.'" *Z.C.* at ¶ 8, quoting *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990), citing *Ford v. Osborne*, 45 Ohio St. 1 (1887), paragraph two of the syllabus.

{¶ 11} In reviewing a juvenile court's decision under a manifest weight challenge, however,

> the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.

*Z.C.* at ¶ 14, citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20.

{¶ 12} With these standards in mind and based on the record, we find that the juvenile court's adjudication of the child as abused and neglected is supported by sufficient evidence and not against the manifest weight of the evidence.

### 1. Finding the Child an "Abused Child"

{¶ 13} The agency's complaint alleged that the child was abused as defined in R.C. 2151.031(D), which states an "abused child" is any child who "[e]xhibits evidence of any physical or mental injury or death, inflicted other than by accidental means, or an injury or death which is at variance with the history given of it." Mother contends that to withstand the agency's burden of proving abuse, it had to prove how the child's injury occurred and that it was not accidental. We disagree.

{¶ 14} The plain language of R.C. 2151.031(D) clearly indicates that parental fault is not required for a finding of abuse. *In re A.C.*, 2010-Ohio-4933, ¶ 43 (6th Dist.). Courts, including this court, have found that

> [d]uring the adjudicatory phase of the proceedings to determine whether a child is an "abused child," the juvenile court does not have to find any fault on the part of the parent, guardian, or custodian in order to conclude that the child is "abused" pursuant to R.C. 2151.031. All that is necessary is that the child be a victim, regardless of who is responsible for the abuse.

*In re Pitts*, 38 Ohio App.3d 1 (5th Dist. 1987), paragraph two of the syllabus; *In re E.B.*, 2020-Ohio-4139, ¶ 50 (8th Dist.); *In re R.W.*, 2024-Ohio-2223 (3d Dist.) (rejecting the argument that the agency is required to establish a specific cause for an injury in proving the child was abused).

{¶ 15} In this case, the evidence before the court demonstrated that in April 2024, the child suffered from unexplained fractures in both of her legs. According to the medical records for this injury, the child presented to the Cleveland Clinic emergency room with a "spiral fracture distal meta diaphysis of the left tibia with prominent periosteal new bone formation along the medial diaphysis and distal metaphysis of the tibia." *See* exhibit No. 4. As a result, the agency filed a complaint alleging abuse and neglect; the child was removed from Mother's custody. During this time that the child was in agency custody, the child sustained no further injuries, including fractures.

{¶ 16} After the agency dismissed the April 2024 complaint and returned the child to Mother's care, the child suffered another fracture, this time to her left femur, causing the child to be placed in a leg brace. Mother did not inform her caseworker that the child suffered another leg fracture, despite speaking with her the day after this new injury. When CCDCFS staff questioned Mother about the new fracture, Mother stated that the child had fallen walking into daycare, but then later told caseworkers that the child had fallen at daycare — a fall unbeknownst to daycare staff. Mother did not have a reasonable explanation for the injury, except to assert that the child was diagnosed with OI.

{¶ 17} Dr. Kacpura testified about the child's genetic testing for OI. Although the testing resulted in a finding for a "variant of uncertain significance" in the COL1A2 gene — only one of the 67 genes tested — Dr. Kacpura testified the genetic testing did not present any pathogenic variants in any of the 67 genes

associated with genetic disorders that cause bone fragility. She further stated although Father had the same variant as the child, she opined that the variant was benign because Father had no unexplained fractures despite him playing contact sports. Dr. Kacpura stated that based on the Father's history and not observing any other suggestive features of the disease, the child's variant is also likely benign. Accordingly, Dr. Kacpura stated that it was her professional opinion that the child was not affected by OI.

{¶ 18} Based on foregoing, the juvenile court's decision finding the child abused was supported by sufficient clear and convincing evidence and was not against the weight of the evidence. Although there was no specific justification or reasoning as to how the child's injuries occurred, the evidence clearly showed that the child suffered from repeated leg fractures only while in Mother's care and custody; no fractures occurred while the child was in agency custody.

## 2. Finding the Child a "Neglected Child"

{¶ 19} The juvenile court's decision finding the child neglected was also supported by clear and convincing evidence. The agency's amended complaint alleged that the child was neglected pursuant to R.C. 2151.03(A)(2) that defines a "neglected child" as any child "[w]ho lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian[.]" "Adequate parental care" means "the provision by a child's parent or parents, guardian, or custodian of adequate food, clothing, and shelter to ensure the child's health and physical safety and the provision by a child's parent or parents of specialized

services warranted by the child's physical or mental needs." R.C. 2151.011(B)(1). R.C. 2151.03(A)(2) "requires some showing that parents, a guardian, or a custodian is at fault before a finding of a lack of proper (or adequate) care can be made." *In re Riddle*, 79 Ohio St.3d 259, 262 (1997).

{¶ 20} In its adoption of the magistrate's decision, the juvenile court found that "based upon [Father's] admission to the allegations in the Amended Complaint and the testimony heard, that a danger to the child exists." Accordingly, it is uncertain whether the court's finding of neglect was based entirely on Father's stipulation or whether Mother failed to ensure the child's health and physical safety. Admittedly, Mother presented the child to the emergency room on multiple instances for treatment of leg fractures. Yet, it cannot be overlooked that the child suffered these fractures only while in Mother's care and custody. Moreover, although not indicated in the magistrate's decision adjudicating the child neglected, testimony was offered expressing concerns about a decrease in the child's weight while in Mother's care.

{¶ 21} Based on the stipulation by Father and the testimony presented, we find that the agency presented sufficient clear and convincing evidence, which is also not against the manifest weight of the evidence, that the child was neglected.

### 3. Disposition of Temporary Custody to the Agency

{¶ 22} Mother next asserts that the juvenile court's decision awarding temporary custody to the agency was an abuse of discretion in violation of her rights to due process and to parent her child. She contends that court should have

awarded her legal custody with protective supervision because the agency did not present any evidence that she did not comply with her case plan during the pendency of the case, but rather the agency failed to provide her with an opportunity to complete her parenting class and the child had missed medical visits since being placed in agency care.

{¶ 23} "Following an adjudicatory hearing, if the juvenile court finds clear and convincing evidence that the child is abused, neglected, or dependent, the court must hold a separate dispositional hearing before issuing a disposition order." *In re J.S.*, 2022-Ohio-1679, ¶ 12 (8th Dist.), citing R.C. 2151.35(A)(1) and 2151.53. The juvenile court then "is authorized to order a disposition for the child, which includes (1) placing the child in protective supervision; (2) committing the child to the temporary custody of the agency; (3) awarding legal custody of the child to either parent or another person; or (4) committing the child to the permanent custody of the agency." *In re K.E.*, 2022-Ohio-3333, ¶ 15 (8th Dist.), citing R.C. 2151.353(A). In choosing between these dispositions, the court's "primary concern remains the best interest of the child." *Id.* at ¶ 17, citing *In re Ka.C.*, 2015-Ohio-1148, ¶ 19 (8th Dist.).

{¶ 24} "An award of temporary custody to a public or private children's services agency is substantially different from an award of permanent custody, where parental rights are terminated." *Ka.C.* at ¶ 20. In this instance, "the parent only loses temporary custody of a child and retains residual parental rights, privileges, and responsibilities." *Id.* Because parents may regain custody of their

child, "'the juvenile court employs the less restrictive "preponderance of the evidence" standard in temporary custody cases as opposed to the "clear and convincing" standard of evidence employed at the dispositional stage in permanent custody cases.'" *Id.*, quoting *In re M.J.M.*, 2010-Ohio-1674, ¶ 9 (8th Dist.).

{¶ 25} Mother's argument that she had not "failed any parts of her case plan while this case was pending" does not undermine the juvenile court's judgment because compliance with a case plan is just one factor that is considered in whether temporary custody is in the child's best interest.

{¶ 26} On the record before us, the juvenile court's decision awarding CCDCFS temporary custody of the child and finding that it is in the child's best interest is supported by the record. Despite Mother working through her case plan and regularly visiting with the child, the court noted that Mother exhibited a few inappropriate and concerning behaviors during those visits. The court relied on testimony that Mother made lengthy telephone calls to relatives during the visits. And the agency presented evidence that Mother provided age-inappropriate snack choices for the child. Glenda Hoyle explained that she had continuing concerns over Mother's seeming resistance to instruction meant to improve her ability to care for the child and to meet her needs; Mother had to be redirected at times when interacting with the child.

{¶ 27} But the most concerning issue expressed by the court was that Mother refused to acknowledge that the child's injuries had not been caused by OI and that this lack of understanding posed an ongoing risk to the child's safety. In

fact, the court found that despite her belief that the child suffers from OI, Mother permitted the child to stand on her shoulders, holding up the child by her arms.

{¶ 28} On this basis, the child's GAL recommended temporary custody to the agency, explaining that "[w]e have a small child who cannot self-protect with two incidences of very serious injuries for which there's no plausible explanation." The GAL further observed that although the genetic testing offered an "uncertain" finding — "the geneticist saying that the Brittle Bone Syndrome is not present at this time" and that "there's no evidence, medical evidence, to support that [diagnosis], and there is medical evidence that rules it out," he noted that the child in her current placement "is very active, jumps off of the sofas, and runs through the yard, goes on play equipment, has had a few falls, but there's never been an injury."

{¶ 29} Based on the foregoing, we find that the juvenile court's decision awarding the agency temporary custody of the child was in the child's best interest and supported by sufficient clear and convincing evidence.

{¶ 30} Mother's first assignment of error is overruled.

## B. Evidentiary Challenges

{¶ 31} In her third assignment of error, Mother challenges the admission of certain evidence and testimony during the adjudication hearing, contending that the challenged testimony and evidence constituted inadmissible hearsay. Specifically, she contends that the juvenile court abused its discretion or committed plain error in (1) permitting Dr. Kacpura to testify as a fact witness,

base her testimony and conclusions on what social workers told her, and to testify as an expert regarding other doctors' diagnoses, circumventing the expert report requirement; (2) admitting the entirety of the child's medical records because they contained statements from other medical professionals who did not testify; (3) permitting Sheffey to read the medical records proffered by Dr. Kacpura into the record and testify about the child's current placement and prior removals; (4) permitting May to testify about the child's medical conditions and offer a theory about the cause of the child's injuries; and (5) allowing Kedzirski to read agency documents into the record.

{¶ 32} Although Mother raises a myriad of evidentiary rulings on appeal, her objections to the magistrate's decision did not assert the same challenges. Rather, Mother's only objection regarding the admissibility of hearsay testimony concerned statements made by other medical professionals contained in the medical records from UH Rainbow Babies & Children's Hospital, certified by Dr. Aditi S. Parikh, M.D., a genetics physician. Specifically, she contends that the progress notes containing other professional's statements were hearsay.

{¶ 33} Under Juv.R. 40(D)(3)(b)(ii), an objection to a magistrate's decision must be "specific and state with particularity all grounds for objection." "Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law. . . unless the party has objected

to that finding or conclusion as required by Juv.R. 40(D)(3)(b)." Juv.R. 40(D)(3)(b)(iv).

{¶ 34} Accordingly, because Mother did not raise any challenge to the magistrate's decision regarding the admissibility of other instances of alleged prejudicial hearsay statements and testimony, this court will not consider them on appeal. *See, e.g., In re R.A.*, 2021-Ohio-4126 (8th Dist.) (where a party fails to raise an issue in its objections to a magistrate's decision, the party waives the issue for purposes of appeal). This court will, however, address Mother's assertion regarding hearsay contained in the medical records as preserved in her objections.

{¶ 35} We review objected-to evidentiary rulings for abuse of discretion. *In re A.G.*, 2025-Ohio-4371, ¶ 28 (8th Dist.). Hearsay is defined as "a statement, other than one made by the declarant while testifying . . . offered in evidence to prove the truth of the matter asserted in the statement." Evid.R. 801(C). If hearsay falls within any of the exceptions enumerated in Evid.R. 803, then it may be admissible. *In re S.H.*, 2024-Ohio-4495, ¶ 47 (8th Dist.).

{¶ 36} A trial judge is presumed to be capable of disregarding improper testimony. *In re S.D-S.*, 2024-Ohio-255, ¶ 36 (8th Dist.). In fact, in response to Mother's objections, challenging various witness statements and testimony, the juvenile court magistrate repeatedly reminded the parties that it would only consider relevant and admissible evidence in making his decision. Accordingly, even if the juvenile court admitted improper hearsay, Mother must show that the court actually relied on that evidence in its judgment. *S.D-S.* at ¶ 36, *In re*

*Fountain*, 2000 Ohio App. LEXIS 672, *18 (8th Dist. Feb. 24, 2000). "The erroneous admission of hearsay evidence is harmless if other evidence, apart from the erroneously admitted evidence, has been offered to prove that which the challenged evidence was offered to prove." *S.D-S.* at *id.*, citing *In re M.H.*, 2022-Ohio-2968, ¶ 73 (8th Dist.).

{¶ 37} On appeal, Mother contends that the juvenile court erred in admitting the entirety of the child's medical records because they contained statements from other medical professionals who did not testify. Mother did not object to the admission of the child's medical records, and in fact, relied on the medical records, including statements and notes by other medical professionals who did not testify, during her cross-examination.[1] Notwithstanding the failure to object and inviting any error, if one occurred, the child's self-authenticated, certified medical records fall within a recognized hearsay exception. R.C. 2317.422 and Evid.R. 803(4). Under Evid.R. 803(4), statements "made for purposes of medical diagnosis or treatment and describing medical history, or past and present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof" are admissible.

{¶ 38} Here, the medical records were clearly for diagnosis and treatment of the child's injuries and whether she suffered from OI. Mother's argument that the records were made in anticipation of litigation is summarily rejected.

---

[1] Under the invited-error doctrine, a party may not take advantage of an error that the party invited or induced. *State v. Armstrong*, 2016-Ohio-2627, ¶ 69 (8th Dist.).

Accordingly, we find no error regarding the admissibility of the child's medical records or the juvenile court's reliance on the information therein.

{¶ 39} Regarding Mother's other evidentiary challenges that were not properly objected to either at trial or in challenging the magistrate's decision, even if not waived, we would not find plain error requiring this court to reverse the juvenile court's decision. Regarding Dr. Kacpura's challenged testimony, we find that her testimony did not contain hearsay statements and if they did, were not prejudicial to Mother. Moreover, the challenged testimony offered by Sheffey was either not hearsay or prejudicial, or it was cumulative to the other unobjected-to admissible exhibits. Finally, we summarily reject the challenged testimony offered by May and Kedzirski because the testimony was neither inadmissible nor prejudicial because the testimony was cumulative to the unobjected-to exhibits, including medical records, and prior witness testimony.

{¶ 40} The magistrate stated repeatedly in response to the many objections raised by Mother during the hearing that any impermissible testimony would not be considered in rendering his decision. Mother has not demonstrated otherwise. Accordingly, we find no error, plain or otherwise, with the juvenile court's evidentiary rulings. The third assignment of error is overruled.

## C. Ineffective Assistance of Counsel

{¶ 41} In her fourth assignment of error, Mother contends that she was deprived of effective assistance of counsel because counsel failed to properly object

to the purported inadmissible testimony and evidence, thus potentially waiving the issue on appeal.

{¶ 42} To establish ineffective assistance of counsel, Mother must demonstrate that (1) counsel's performance was deficient; and (2) the deficient performance prejudiced her, thus depriving her of a fair trial. *State v. Trimble*, 2009-Ohio-2961, ¶ 98, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The failure to prove either prong of this two-part test makes it unnecessary for a court to consider the other prong. *State v. Madrigal*, 2000-Ohio-448, ¶ 49, citing *Strickland* at 697. This standard of review is applicable in custody proceedings. *S.D-S.*, 2024-Ohio-255, at ¶ 42 (8th Dist.), citing *In re Wise*, 96 Ohio App.3d 619, 627 (9th Dist. 1994) (Ineffective-assistance-of-counsel claims can be raised in custody cases.).

{¶ 43} In this case, Mother has not and cannot prove that counsel's performance was deficient. Her arguments on appeal focus on counsel's failure to properly object to certain testimony and evidence. Having previously found no error in the admissibility of the challenged testimony and evidence, counsel's performance cannot be deemed deficient under the *Strickland* standard. Accordingly, Mother was not denied effective assistance of counsel. The fourth assignment of error is overruled.

### D. Cumulative Error

{¶ 44} Mother contends in her fifth assignment of error that the cumulative effect and prejudice of the errors by the juvenile court and trial counsel merit reversal under the doctrine of cumulative error.

{¶ 45} Under the cumulative-error doctrine, a final decision will be reversed when the cumulative effect of errors in a trial deprived the appellant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal. *State v. McKelton*, 2016-Ohio-5735, ¶ 321. The cumulative-error doctrine applies in civil cases, including custody cases. *S.D-S.*, 2024-Ohio-255, at ¶ 47 (8th Dist.).

{¶ 46} To find cumulative error, this court must find: (1) that multiple errors were committed by the juvenile court, and (2) there is a reasonable probability that the outcome of the proceedings would have been different but for the combination of the separately harmless errors. *State v. Viceroy*, 2012-Ohio-2494, ¶ 21 (8th Dist.), citing *State v. Clark*, 2008-Ohio-1404, ¶ 62 (8th Dist.). In this case, having found no errors, we summarily overrule Mother's fifth assignment of error.

{¶ 47} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, JUDGE

EILEEN T. GALLAGHER, P.J., and
EILEEN A. GALLAGHER, J., CONCUR